In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1220

MARK WILKINSON,

Petitioner-Appellant,

v.

ROGER D. COWAN, Warden,

Respondent-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern
Division.
No. 98 C 3430--George W. Lindberg, Judge.

Argued December 7, 1999--Decided November 1,
2000

Before HARLINGTON WOOD, JR., RIPPLE, and
ROVNER, Circuit Judges.

ROVNER, Circuit Judge.  Convicted of
murdering his estranged wife, Mark
Wilkinson sought post-conviction relief
in Illinois state court. Among other
things, he argued that his trial counsel
was ineffective for failing to
investigate (or to provide him with a
copy of) the coroner's autopsy report,
which contained certain obvious
discrepancies. After the circuit court
summarily dismissed Wilkinson's petition,
his appellate counsel sought leave to
withdraw, asserting that his case
presented no issue of arguable merit. The
Illinois appellate court, upon review of
the record, agreed. It granted the motion
to withdraw, and without further ado,
affirmed the circuit court's judgment.
When he later sought federal habeas
relief, the district court determined
that Wilkinson had procedurally defaulted
the ineffectiveness claim by failing to
present the claim to the Illinois
appellate court. We disagree. The state
appellate court, when it elected to
affirm the circuit court's judgment

outright, without inviting Wilkinson to brief his appeal pro se, implicitly reached the merits of all of the issues he had raised in his post-conviction petition. We therefore remand the ineffectiveness claim to the district court for consideration on the merits.

I.

Wilkinson, an airline pilot, was in the process of divorcing his wife Gilda in 1991. He claims that on May 26 of that year, after driving his daughter to their home in the Chicago suburb of Hoffman Estates, he and Gilda began to argue about the divorce settlement. The argument escalated and, according to Wilkinson, Gilda began to hit him, grabbed his wrist, and then bit into his little finger and refused to let go. In an effort to free himself, Wilkinson says, he fought back--he tripped her, pushed her nose, punched her in the face, and, ultimately, squeezed her neck. Although Wilkinson claims it was not his intent to kill Gilda, that is what he did: she died of strangulation.

It turns out that Wilkinson previously had talked about the possibility of killing Gilda with several of his friends, and he had even detailed a variety of murder scenarios on his computer. Realizing that the circumstances were incriminating, Wilkinson consulted the print-out of murder scenarios he had carried with him in his car and decided that he should cremate Gilda's body and claim that she was missing. He went so far as to wrap her body in plastic (conveniently, he had a roll of plastic in the trunk of his car) and to partially dismember the corpse (so that it would fit into a fireplace). He was interrupted when his fiancee, her suspicions aroused by a telephone call canceling their dinner date, came to the house and confronted him. Eventually, Wilkinson told her that he had killed Gilda. She took the Wilkinsons' daughter from the house and telephoned his parents.

Wilkinson later stole a plane from a suburban airport and flew it into a storm front, purportedly in the hope of ending his life. The plane remained airborne, however, which Wilkinson interpreted as a sign of divine intervention. He landed

the plane intending, he says, to turn himself in, but took off again when he spotted a police car approaching. He flew to an airport near Kankakee, Illinois, where he spent the night. He was arrested there the following morning.

A central issue at Wilkinson's trial was whether he intended to kill Gilda. Among the evidence that the State relied upon to show that Wilkinson deliberately strangled her was the autopsy report, which indicated that Gilda's Adam's apple had been crushed. Wilkinson alleges that he asked his attorney to provide him with a copy of the report in advance of trial so that he could review the report himself, but his attorney failed to do so. When he examined the report after the trial, Wilkinson discovered several discrepancies. Among other things, the report indicated that the coroner had removed the gallbladder and sent it for toxicological examination, but Gilda's gallbladder, Wilkinson alleges, had been surgically removed fourteen months prior to her death. The report also indicated that the body was free of scars, although Gilda had obvious scars not only from the removal of her gallbladder but also from the Caesarian section that had been performed when she gave birth to her daughter. Neither these nor any of the other asserted discrepancies in the report were raised by Wilkinson's attorney at trial, however.

A jury convicted Wilkinson in 1992 of first degree murder and of concealing a homicide. After the jury opted not to im pose the death penalty, the trial judge ordered him to serve consecutive prison terms of 70 years for the murder and 10 years (reduced on appeal to five years) for concealment. The appellate court affirmed his conviction and sentence (as modified) in 1995, and the following year the Illinois supreme court denied his petition for leave to appeal.

Meanwhile, Wilkinson filed a pro se petition for post-conviction relief in the circuit court. Among the many claims he included in that petition was the contention that he was deprived of his Sixth Amendment right to the effectiveassistance of an attorney when his trial counsel failed to tender a copy of the coroner's report for his review and failed to review and investigate the

report more thoroughly. See, e.g., R. 30-9 at C42, C79, C91-92, C97-98. One month after Wilkinson filed the petition, the trial judge dismissed it as frivolous in a one-sentence order. R. 30-10 at C348. Wilkinson filed a notice of appeal, and at his request, the public defender's office was appointed to represent him. Invoking Pennsylvania v. Finley, 481 U.S. 551, 107 S. Ct. 1990 (1987), the defender's office filed a two-page motion to withdraw from representation. R. 11, Ex. E. The ten-line "brief in support" included in the body of the motion asserted without elaboration that "[Wilkinson's] petition fails to allege any facts that give rise to a claim of a constitutional deprivation. Therefore, there are no appealable issues in this case." Id. at 2 (citations omitted). Wilkinson was served with a copy of the motion, but he was not invited to file a response and he did not do so of his own initiative. Eleven months later, the Illinois appellate court issued an order granting the motion, stating:

  We have carefully reviewed the record in this case and the aforesaid brief in compliance with the mandate of Pennsylvania v. Finley and find no issues of arguable merit. Therefore, the motion of the public defender for leave to withdraw as counsel is allowed and the judgment of the circuit court is affirmed.
  Affirmed.

R. 11, Ex. F. at 2. Wilkinson sought leave to appeal to the Illinois supreme court, reasserting each of the claims he had included in his post-conviction petition (see R. 11, Ex. G), but that court denied his petition. R. 11, Ex. H.

  In 1998, Wilkinson filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. sec. 2254. His petition, as amended, included the claim of ineffectiveness based on his trial attorney's failure to give Wilkinson a copy of the coroner's report and to appropriately investigate that report. R. 20 at 7-8. The State's answer to the petition asserted that Wilkinson had procedurally defaulted the ineffectiveness claim (among others) by failing to present that claim to the Illinois appellate court on appeal from the denial of his post-conviction

petition. R. 10 at 9-10. The district court agreed and denied the petition in a brief minute order, without reaching the merits of the ineffectiveness claim. R. 21. After the district court declined Wilkinson's request for a certificate of appealability, he renewed his request in this court. See 28 U.S.C. sec. 2253(c); Fed. R. App. 22(b)(1). Upon examination of the record and the district court's order, a judge of this court granted Wilkinson's application for a certificate of appealability limited to the following issue: "Whether trial counsel was ineffective in failing to investigate thoroughly and permit petitioner to review the accuracy of the medical examiner's autopsy report."

II.

Consistent with the limited terms of the certificate of appealability that this court issued, the sole claim that Wilkinson pursues on appeal is the ineffectiveness claim. In essence, he contends that his attorney should have discovered the errors in the coroner's report; alternatively, he asserts that he was familiar with his wife's medical history and would have discovered discrepancies in the report himself if only his attorney had provided him with a copy as he requested. Had these errors been exposed at trial, Wilkinson argues, they would have undermined the credibility of the coroner's report and weakened the State's case for the proposition that Wilkinson deliberately strangled his wife. No court has reached the merits of this argument in any of the summary orders issued to date. The State argues that we ought not to do so either, because Wilkinson procedurally defaulted the ineffectiveness claim by failing to present it to the Illinois Appellate Court. See generally Picard v. Connor, 404 U.S. 270, 275-76, 92 S. Ct. 509, 512 (1971); Bocian v. Godinez, 101 F.3d 465, 469 (7th Cir. 1996); see also, e.g., Cawley v. DeTella, 71 F.3d 691, 694-95 (7th Cir. 1995); Jones v. Washington, 15 F.3d 671, 675 (7th Cir.), cert. denied, 512 U.S. 1241, 114 S. Ct. 2753 (1994), overruled on other grounds by Hogan v. McBride, 74 F.3d 144, 147, modified on reh'g, 79 F.3d 578 (7th Cir. 1996); Jenkins v. Gramley, 8 F.3d 505, 507-08 (7th Cir. 1993); Farrell v. Lane, 939 F.2d 409, 411 (7th Cir.), cert. denied,

502 U.S. 944, 112 S. Ct. 387 (1991).

The ineffectiveness claim, the State notes, was not one of the claims that Wilkinson pursued on direct appeal to the Illinois Appellate Court. That claim, in fact, was first raised in the post-conviction petition that the circuit court summarily dismissed as frivolous. Although Wilkinson did appeal from that dismissal, his appointed counsel sought leave to withdraw without briefing the merits of any of the issues raised in the case. In the State's view, it was incumbent upon Wilkinson at that juncture either to submit a pro se memorandum responding to the motion to withdraw or to file his own brief addressing the merits of the issues he sought to appeal. Not having done so, Wilkinson never presented the operative facts and legal principles governing his ineffectiveness claim to the Illinois appellate court, and he thereby forfeited the right to pursue that claim in federal court.

In view of the particular way in which the Illinois appellate court disposed of Wilkinson's post-conviction appeal, however, we do believe that he procedurally defaulted the ineffectiveness claim. Wilkinson did take an appeal from the dismissal of his post-conviction petition, and to that extent he preserved each of the claims asserted in his post-conviction petition for consideration by the appellate court. Had the appeal proceeded to briefing on the merits, Wilkinson (or his attorney) of course would have been obliged to develop the basis for his ineffectiveness claim and thus to give the appellate court an adequate opportunity to evaluate the merits of that claim. If he had omitted to do so, he could be said to have defaulted the claim. E.g., Howard v. O'Sullivan, 185 F.3d 721, 725 (7th Cir. 1999); Momient-El v. DeTella, 118 F.3d 535, 540-41 (7th Cir.), cert. denied, 522 U.S. 984, 118 S. Ct. 448 (1997). Instead, however, the public defender's office, which had been appointed to pursue the appeal on his behalf, sought leave to withdraw, arguing without elaboration in its motion and supporting "brief" that the case presented no constitutional issue worthy of appellate review. Nominally, all that the defender's office asked for was to be released from its obligation to represent Wilkinson; it did

not request the court to dismiss the appeal or to affirm the circuit court's judgment. But of course, any motion to withdraw pursuant to Finley or Anders v. California, 386 U.S. 738, 87 S. Ct. 1396 (1967), necessarily implicates the merits of an appeal, because the premise of the motion is that the appeal is frivolous. In deciding whether to allow the withdrawal, the court must, therefore, examine the substance of the case to determine whether there are any issues of arguable merit. Once the court has satisfied itself that there are no such issues, the court may not only release the appellant's counsel, but proceed to dismiss the appeal or to affirm the judgment. See Anders, 386 U.S. at 744, 87 S. Ct. at 1400. The apparent practice in Illinois is to affirm the judgment. See, e.g., People v. Jones, 231 N.E.2d 390 (Ill. 1967) (direct appeal, applying Anders); People v. Lee, 621 N.E.2d 287 (Ill. App. 1993) (post-conviction appeal, applying Finley). That is precisely what the appellate court did in this case. Its affirmance was based on something less than full, adversarial briefing--really, no briefing at all-- but its order leaves no doubt that, after a "careful[ ] review[ ] [of] the record," the court affirmed outright the dismissal of Wilkinson's post-conviction petition. R. 11, Ex. F. at 2. This can only be understood as a merits-based decision with respect to each of the claims raised in the petition, including the ineffectiveness claim. See Penson v. Ohio, 488 U.S. 75, 80, 109 S. Ct. 346, 350 (1988) (once the appellate court decides that there is no non-frivolous issue for appeal, "the court [may] proceed to consider the appeal on the merits without the assistance of counsel") (emphasis ours).

It may have been possible, as the State suggests it was, for Wilkinson on his own initiative to have argued the merits of his ineffectiveness claim either by filing a memorandum in opposition to the public defender's motion to withdraw (and citing his ineffectiveness claim as one that merited appellate review in the normal course) or by filing a merits brief of his own; but we do not think that Wilkinson can be faulted for failing to take either of these steps. Wilkinson was not apprised (either by his attorney or by the appellate court) that he had a

right to respond to the motion, let alone an obligation to do so if he wished to preserve his claims for further review. Cf. Lee, 621 N.E.2d at 65 (post-conviction appeal) ("Counsel requested that this court grant petitioner a reasonable opportunity to show cause why the appeal should not be dismissed or the judgment affirmed for lack of merit and why the office of the State Appellate Defender should not be allowed to withdraw as counsel on appeal. The clerk of this court advised petitioner that he had 30 days in which to respond to the motion and in which he could file any additional matters of merit."); People v. Hopkins, 354 N.E.2d 141, 142 (Ill. App. 1976) (post-conviction appeal) ("Copies of the motion [to withdraw] and brief were forwarded to the defendant, and he was advised that he might file any points in support of his position."). We do not mean to fault either the appellate court or Wilkinson's attorney for not taking that step; Finley itself indicates that such prophylactic measures are not constitutionally required in the post-conviction setting. We simply reject the State's contention that Wilkinson can be charged with a procedural default under these circumstances.

When it chose to affirm outright the dismissal of Wilkinson's post-conviction petition, the appellate court rendered a merits judgment as to each of the claims raised in that petition. The fact that the court did not identify or discuss the ineffectiveness claim in its order is irrelevant. Smith v. Digmon, 434 U.S. 332, 98 S. Ct. 597 (1978) (per curiam). What matters is that Wilkinson made the claim in his post-conviction petition, that the appellate court undertook a "careful review" of the record on its own without soliciting merits briefing from Wilkinson, and affirmed the dismissal of his petition. Notably, the court did not rely on any omission by Wilkinson as an independent procedural ground for affirmance; it chose instead to affirm the dismissal of Wilkinson's petition outright. Accordingly, the federal courts have jurisdiction over Wilkinson's ineffectiveness claim. See generally Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038 (1989); see also, e.g., Hunter v. Aispuro, 982 F.2d 344, 347-48 (9th Cir. 1992), cert. denied, 510 U.S. 887, 114 S. Ct. 240 (1993); Lewis v. Borg, 879 F.2d

697, 698 (9th Cir. 1989) (per curiam);
cf. Coleman v. Thompson, 501 U.S. 722,
740, 111 S. Ct. 2546, 2559 (1991)
(procedural default found where state
supreme court granted State's motion to
dismiss petition to appeal as untimely,
as opposed to denying petition)./1

   At this juncture, we believe it
appropriate to return the case to the
district court to give that court the
first opportunity to consider the merits
of Wilkinson's ineffectiveness claim.
None of the four courts to which this
claim has been presented previously has
explicitly addressed this claim.
Wilkinson is entitled to have the claim
considered, and our own evaluation of the
claim on appeal would be greatly
facilitated if we had some rationale to
review.

III.

   Having found that Wilkinson did not
procedurally default his claim of
attorney ineffectiveness, we REVERSE the
judgment in part and REMAND the case to
the district court so that it may address
the merits of that claim.

/1   Wilkinson has independently argued that the
Illinois appellate court deprived him of due
process by affirming the circuit court's judgment
without first granting him the opportunity to
retain new representation or allowing him to file
his own brief, once the court had decided to
allow the public defender to withdraw. That
argument was not presented below, however,
notwithstanding the fact that the issue was
evident from the face of the appellate court's
order. Typically, we do not reach the merits of
arguments raised for the first time on appeal,
e.g., Perry v. Sullivan, 207 F.3d 379, 383 (7th
Cir. 2000), and we discern no special
circumstances that would counsel in favor of us
doing so here.