# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 03-4013

PETER LEWIS,

*Petitioner-Appellant*,

v.

JERRY STERNES,

*Respondent-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 2905—**Matthew F. Kennelly**, *Judge*.

———————

ARGUED MAY 18, 2004—DECIDED DECEMBER 6, 2004

———————

Before FLAUM, *Chief Judge*, and KANNE and ROVNER,
*Circuit Judges*.

ROVNER, *Circuit Judge*. Peter Lewis filed a petition for a
writ of habeas corpus contending that his Illinois conviction
for residential burglary should be vacated based on several
alleged constitutional violations. The district court dis-
missed his petition, concluding that Lewis had procedurally
defaulted each of his constitutional claims and that federal
review of these claims was therefore barred. We agree and
affirm.

## I.

According to the State's evidence, Lewis burglarized the Hyde Park residence of three University of Chicago students in the early morning hours of November 18, 1995. Lewis fled after two of the apartment's inhabitants saw him and screamed. Armed with their description of the burglar, police apprehended Lewis approximately 30 minutes later. Lewis was taken back to the apartment, where both of the victims identified him as the burglar. That "show-up" identification apparently was based to some degree on the clothing that Lewis was wearing and a perceived match between Lewis's jeans and a stray button that was found in the burglarized apartment.

A jury subsequently convicted Lewis of residential burglary, and the trial judge ordered him to serve a prison term of 20 years. Lewis took an appeal to the Illinois Appellate Court, raising a single issue having to do with the trial court's handling of jury voir dire after one of the prospective jurors disclosed that she had expressed an opinion about the case to other members of the venire. R. 8 Exs. A-C. Finding no merit in that issue, the appellate court affirmed Lewis's conviction. *People v. Lewis*, No. 1-97-3014, Order (Ill. App. Ct. Dec. 10, 1998); R. 8 Ex. D. The Illinois Supreme Court denied his pro se petition for leave to appeal.

On September 29, 1999, Lewis filed a pro se petition for post-conviction relief, asserting principally that his counsel at trial and on direct appeal had been constitutionally ineffective in a variety of respects. R. 8 Ex. G. In addition, Lewis alleged that authorities in advance of trial had improperly destroyed the clothes he was wearing at the time of his arrest, depriving him of evidence that would have helped to establish his innocence. *Id.* at C14-15 ¶ 8. Among the claims of ineffectiveness were four claims that Lewis later would assert in his habeas petition: (a) his trial counsel failed to subpoena and examine the clothing that he

wore at the time of his arrest, before that clothing was destroyed (*id.* at C13-14 ¶ 6); (b) counsel did not seek to exclude evidence of the victims' pre-trial identification of him as the burglar (*id.* at C12 ¶¶ 3, 4); (c) counsel failed to object to the destruction of his clothing (*id.* at C13-14 ¶ 6); and (d) counsel neglected to call certain exculpatory witnesses to testify on his behalf (*id.* at C11 ¶ 1, C12 ¶ 2, C14 ¶ 7). On November 12, 1999, the trial court summarily dismissed the petition as "frivolous and patently without merit." R. 8 Ex. H at A3. In its oral ruling, the court specifically addressed only one of the claims that Lewis had made in his petition. This was a claim that Lewis's trial counsel was ineffective for failing to call a Chicago police detective to testify that the victims had been unable to identify Lewis at the show-up some 30 minutes after the burglary took place. Lewis contended that a police report, which he had attached to his post-conviction petition, confirmed that the victims had been unable to identify him. The trial court disagreed:

> He is just wrong. That is not what it states in this report at all. If I take what [Lewis] states [in his petition] as true, maybe it would be grounds for a hearing. [But] [h]e has included in support of that something that contradicts this. And as I say, I recall the trial in any event. So the petition is meritless and will be dismissed.

R. 8 Ex. H at A3-4.

On November 16, 1999, four days after the trial court dismissed Lewis's original post-conviction petition and almost certainly before Lewis received notice of that ruling, Lewis (again pro se) submitted a motion to amend his post-conviction petition. R. 8 Ex. I. In that motion, Lewis sought leave to raise a number of new claims that he had not asserted in the original petition. Among these claims was the contention that Lewis's appellate counsel was ineffective for failing to contend on direct appeal that the jury selection

process had deprived Lewis of his rights under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712 (1986). R. 8 Ex. I at C34 ¶ 4(d). Because the motion to amend was filed after the trial court had already dismissed Lewis's original post-conviction petition, it was treated as a successive post-conviction petition, and consistent with that treatment we shall refer to it as such. The trial court summarily dismissed the successive petition on December 14, 1999. R. 8 Ex. J.

Lewis separately appealed the dismissals of both his original and successive post-conviction petitions. The appeals were not consolidated, and they proceeded on separate but parallel tracks through the Illinois Appellate Court. The Cook County Public Defender's Office was appointed to represent Lewis in both appeals.

In the first appeal (No. 1-99-4205), from the summary dismissal of Lewis's original post-conviction petition, Lewis, through his appointed counsel, pursued only one of the claims asserted in that petition. The appeal focused on the same claim that the trial court had remarked upon in dismissing the petition—the claim that Lewis's trial counsel had improperly failed to call a police officer to testify that the victims had been unable to identify him at the show-up. Lewis's counsel contended that because this claim presented the "gist" of a potentially meritorious constitutional argument, the trial court should have appointed counsel and conducted further proceedings rather than summarily dismissing this claim along with the others raised in the post-conviction petition. R. 8 Ex. K.

On March 22, 2001, the appellate court affirmed the dismissal of this claim. Like the trial court, the appellate court reasoned that the police report attached to Lewis's post-conviction petition undermined his allegation that the victims of the burglary had been unable to identify him at the show-up. Consequently, there was no reason to believe that the police detective who witnessed the show-up would have

provided testimony that was helpful to Lewis. *People v. Lewis*, No. 1-99-4205, Order (Ill. App. Ct. Mar. 22, 2001); R. 8 Ex. M-1.

In the second appeal (No. 1-00-0128), from the summary dismissal of Lewis's successive post-conviction petition, the Cook County public defender sought the appellate court's leave to withdraw as Lewis's counsel pursuant to *Pennsylvania v. Finley*, 481 U.S. 551, 107 S. Ct. 1990 (1987). R. 8 Ex. N. In the defender's view, Lewis had no meritorious argument to make in support of reversing the dismissal of his successive petition. Among other things, the defender noted that the Illinois post-conviction hearing act contemplated the filing of a single petition for relief by the petitioner. *Id.* at 3. Counsel also pointed out that if Lewis prevailed in the first appeal, from the dismissal of his original petition, he would be given the opportunity to amend that petition. *Id.* at 4.

Lewis filed a brief in opposition to his counsel's *Finley* motion. In that brief, Lewis listed a host of claims that, in his view, were meritorious and that he believed the appellate court ought to address. Among those claims were several that Lewis had set forth in his original post-conviction petition, including his claim that the prosecution had improperly destroyed exculpatory evidence (the clothing he was wearing at the time of his arrest) (R. 8 Ex. O at 21-24), and his claims of attorney ineffectiveness based on his trial counsel's failure to examine his clothing before it was destroyed and counsel's failure to contact (and call to testify) certain witnesses who allegedly would have given exculpatory testimony (*id.* at 1-5, 12-15, 16-20).

In an order issued on February 22, 2001, the Illinois Appellate Court granted the Cook County public defender leave to withdraw as Lewis's counsel and affirmed the dismissal of Lewis's successive petition. *People v. Lewis*, No. 1-00-0128, Order (Ill. App. Ct. Feb. 22, 2001); R. 8 Ex. M-2.

We have carefully reviewed the record in this case, the aforesaid brief [in support of the public defender's motion to withdraw], and defendant's response in compliance with the mandate of the *Finley* decision and find no issues of arguable merit. Therefore, the motion of the public defender for leave to withdraw as counsel is allowed.

The judgment of the Circuit Court of Cook County is affirmed.

Order at 2; R. 8 Ex. M-2 at 2.

Lewis subsequently obtained leave from the Illinois Supreme Court to file a late petition for leave to appeal. R. 8 Ex. Q. That petition, along with a subsequent motion to amend the petition, contained only the number of his first appeal. R. 8 Exs. R, S. However, those documents referred to the second appeal and the issues raised therein, and Lewis attached to the petition itself the orders issued by the appellate court in the second as well as the first appeal. The order allowing Lewis to file the petition also referenced the numbers of both appeals. *See* R. 8 Ex. Q. The Illinois Supreme Court ultimately denied the petition. R. 8 Ex. T.

Having exhausted his state court remedies, Lewis filed a pro se petition for a writ of habeas corpus in the district court. R. 1. In that petition (as fleshed out by the memorandum that he subsequently filed in reply to the State's answer), Lewis asserted four basic claims: (1) that suggestive procedures tainted the identifications of the burglary victims; (2) that the State had improperly destroyed exculpatory evidence (the clothing Lewis wore at the time of his arrest) in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963); (3) that the State's exercise of peremptory challenges in jury selection violated *Batson*, and that the trial court had erred in not answering certain factual questions about the case that the jury posed to the court during

its deliberations; and (4) that he was denied the effective assistance of trial counsel in various respects.[1] Lewis's claims of attorney ineffectiveness (collectively, Claim 4) were based on four asserted omissions by his trial counsel: (a) the failure to examine the clothing evidence before the State improperly destroyed it, which examination, according to Lewis, would have shown that the button found in the burglarized apartment did not match the jeans Lewis was wearing; (b) the failure to seek suppression of the victims' pre-trial identification of him as the burglar; (c) the failure to object to, and seek appropriate sanctions for, the State's destruction of the clothing; and (d) the failure to call certain witnesses who (allegedly) would have provided exculpatory testimony.

The district court ultimately dismissed Lewis's petition in its entirety on the ground that he had procedurally defaulted each of his claims. In the first of two opinions, the court found that Lewis had failed to properly assert Claims 1, 2, or 3 either on direct appeal from his conviction or in the post-conviction proceedings and had therefore defaulted those claims; moreover, he had not established cause for the default or resulting prejudice that would permit the court to overlook the default. *Lewis v. Sternes*, No. 02 C 2905, 2002 WL 31687607, at *4-*5, *6 (N.D. Ill. Dec. 2, 2002). As for the four grounds of attorney ineffectiveness alleged in Claim 4, the State in its answer had asserted that two of these four grounds likewise had been procedurally defaulted. The court agreed as to one of these grounds—Claim 4(b), based on his trial counsel's failure to move to suppress the victim identifications—and ordered the State to supplement

---

[1] We have listed and numbered Lewis's claims consistent with the manner and order in which the district court numbered and addressed the claims. Lewis's habeas petition itself sets the claims forth in a somewhat different order.

its answer by responding to the merits of the remaining three grounds. *Id.* at \*5-\*6, \*7. Instead, the State, after first allowing the deadline for its supplemental answer to pass and then belatedly securing an extension of time (over Lewis's objection), filed a supplemental memorandum urging the court to dismiss the three remaining claims of ineffectiveness, contending that Lewis had procedurally defaulted all of them. R. 27. The district court ordered this memorandum stricken, finding that the State had failed to comply with its order to supplement its answer and respond to the merits of these claims. R. 29. The court did permit the State to assert its belated procedural default arguments in addition to addressing the merits of these claims, although the court reserved the right to determine whether the State had waived the procedural default arguments by not raising them in its original answer. *Id.* The State complied by filing a supplemental memorandum that both answered the three remaining claims of ineffectiveness and posited reasons why, in its view, Lewis had procedurally defaulted those claims. R. 30.

After reviewing the State's supplemental memorandum, the court agreed that Lewis had procedurally defaulted the remaining instances of alleged ineffectiveness—Claims 4(a), 4(c), and 4(d). *Lewis v. Sternes*, No. 02 C 2905, 2003 WL 22250020 (N.D. Ill. Oct. 1, 2003). It reasoned that although Lewis had, for the most part, asserted the claims in his original petition for post-conviction relief,[2] he had not

---

[2]  The court pointed out, however, that Lewis had not raised one aspect of Claim 4(d) in either of his two post-conviction petitions. This was the contention that his trial counsel was ineffective for failing to summon to testify a friend of the burglary victims who was present in their apartment both when the burglary occurred and when police brought Lewis back to the apartment for the victims to identify. According to Lewis, that individual would have

(continued...)

properly raised them in his appeal from the dismissal of that petition. *Id.* at \*6. The court rejected Lewis's assertion that the State had waived these procedural defaults by not raising them in its original answer to the habeas petition. The court indicated that it was "unwilling" to find such a waiver in view of the fact that federal review of Lewis's claims had not proceeded beyond the initial stage and the rules governing habeas corpus proceedings contemplated amendment of pleadings as appropriate. *Id.*

The district court later agreed to certify for appeal the question whether it is proper to permit the State to belatedly assert instances of procedural default not raised in its original answer. It also certified for appeal the question whether Lewis's habeas claims were, indeed, procedurally defaulted. *Lewis v. Sternes*, No. 02 C 2905, 2003 WL 22682319 (N.D. Ill. Nov. 13, 2003).

## II.

The district court's determination that Lewis procedurally defaulted each of the claims asserted in his habeas petition was a legal determination. *E.g.*, *Abela v. Martin*, 380 F.3d 915, 922 (6th Cir. 2004); *Villot v. Varner*, 373 F.3d 327, 331 (3d Cir. 2004). Our review of the lower court's decision is therefore de novo. *Page v. Frank*, 343 F.3d 901, 905 (7th Cir. 2003); *Braun v. Powell*, 227 F.3d 908, 911-12 (7th Cir. 2000).

Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas

---

[2] (...continued)
testified, among other things, that the victims were initially unable to identify him as the burglar. Because this particular subpart of Claim 4(d) was never presented to the Illinois trial court, the district court found that it was procedurally defaulted for that reason. 2003 WL 22250020, at \*7.

corpus, *see* 28 U.S.C. § 2254(b)(1)(A), is the duty to fairly present his federal claims to the state courts. *Baldwin v. Reese*, 541 U.S. 27, 124 S. Ct. 1347, 1349 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45, 119 S. Ct. 1728, 1732 (1999); *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 512 (1971). "Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in the federal habeas proceeding does it make sense to speak of the exhaustion of state remedies." *Id.* at 276, 92 S. Ct. at 512. Fair presentment in turn requires the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings. *Boerckel*, 526 U.S. at 845, 119 S. Ct. at 1732-33. This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory. *Ibid.*

A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim. *See id.* at 848-49, 119 S. Ct. at 1734; *see also, e.g.*, *Howard v. O'Sullivan*, 185 F.3d 721, 725 (7th Cir. 1999); *Momient-El v. DeTella*, 118 F.3d 535, 541 (7th Cir. 1997). A procedural default will bar federal habeas relief unless the petitioner can demonstrate both cause for and prejudice stemming from that default, *Wainwright v. Sykes*, 433 U.S. 72, 86-87, 97 S. Ct. 2497, 2506 (1977), *or* he can establish that the denial of relief will result in a miscarriage of justice, *Murray v. Carrier*, 477 U.S. 478, 495-96, 106 S. Ct. 2639, 2649 (1986). Cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his federal claim to the state courts. *Id.* at 488, 492, 106 S. Ct. at 2645, 2648. Prejudice is established by showing that the violation of the petitioner's federal rights "worked to his *actual* and substantial disadvantage, infecting his entire trial with error

of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170, 102 S. Ct. 1584, 1596 (1982) (emphasis in original). In order to show, alternatively, that a miscarriage of justice would result if habeas relief is foreclosed, the petitioner must show that he is actually innocent of the offense for which he was convicted, i.e., that no reasonable juror would have found him guilty of the crime but for the error(s) he attributes to the state court. *Schlup v. Delo*, 513 U.S. 298, 327-29, 115 S. Ct. 851, 867-68 (1995).

Lewis procedurally defaulted Claims 1 (tainted identifications) and 3 (*Batson* violation). He did not pursue either of these claims, as such, on direct appeal or in the post-conviction proceeding. It is true that during the post-conviction proceeding, Lewis cited his trial and/or appellate counsel's failure to pursue these claims in support of his claims of attorney ineffectiveness. However, an assertion that one's counsel was ineffective for failing to pursue particular constitutional issues is a claim separate and independent of those issues. A meritorious claim of attorney ineffectiveness might amount to cause for the failure to present an issue to a state court, but the fact that the ineffectiveness claim was raised at some point in state court does not mean that the state court was given the opportunity to address the underlying issue that the attorney in question neglected to raise. It is undisputed that Lewis did not raise Claims 1 or 3 in state court. Consequently, unless Lewis can demonstrate one of the two bases discussed above for excusing his default (i.e., cause and prejudice, or a miscarriage of justice), habeas relief on those claims is foreclosed to him.

As Lewis suggests and the State concedes, if his trial and/or his appellate attorneys were ineffective for failing to present these claims at trial and on direct appeal of his conviction, then their sub-par representation might supply cause for his procedural default of these claims. However, a claim of ineffectiveness must itself have been fairly presented to the state courts before it can establish cause for

a procedural default of another claim. *Edwards v. Carpenter*, 529 U.S. 446, 452-54, 120 S. Ct. 1587, 1591-92 (2000). As we conclude below, Lewis procedurally defaulted his ineffectiveness claims in the Illinois courts. Consequently, his attorneys' alleged ineffectiveness cannot excuse the default of Claims 1 and 3. Lewis alternatively has not attempted to demonstrate the possibility that a miscarriage of justice will occur if these claims are not heard. Accordingly, the merits of these claims cannot be entertained on habeas review.

Claim 2 (the *Brady* claim) stands on a somewhat different footing. Lewis's original post-conviction petition did contain an argument that the State improperly destroyed the clothing that he wore at the time of his arrest and that the destroyed clothing might have established his innocence. R. 8 Ex. G at C14-15. This argument fell within a section of the post-conviction petition that Lewis entitled "Ineffective Assistance of Trial Counsel" (*id.* at C-11); and consistent with that heading, most of the arguments in that section were focused on steps that his trial attorney had failed to take and arguments that he had failed to advance. In contrast to those other arguments, however, this particular contention did not advance a theory as to why Lewis's attorney was ineffective for failing to raise this issue; it simply suggested that the evidence was improperly destroyed. As the State concedes (State Br. at 29), given a liberal construction, the post-conviction petition could be interpreted to be making a *Brady* claim proper, as opposed to a claim that Lewis's attorney was ineffective for failing to make such a claim. As Lewis prepared the petition without the assistance of counsel, we owe it a generous interpretation. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 595-96 (1972).

However, after raising Claim 2 in his post-conviction petition, Lewis failed to pursue that claim through one complete round of review in the Illinois courts. He did even-

tually raise the claim with the appellate court, but in the wrong appellate proceeding. The problem here emanates from the fact that there were two separate appeals in the post-conviction process, the first arising from the summary dismissal of Lewis's original post-conviction petition, and a second appeal arising from the dismissal of his successive post-conviction petition. Lewis did not raise Claim 2 in the appeal challenging the dismissal of his original post-conviction petition, where the claim had been raised. Lewis was represented by counsel in that appeal, and his attorney chose to raise only a single issue having nothing whatsoever to do with the *Brady* claim. Only in the second appeal, from the denial of his successive petition, did Lewis mention the *Brady* claim. Recall that in that appeal, Lewis's appointed counsel moved to withdraw from representing him pursuant to *Pennsylvania v. Finley*, asserting that Lewis had no meritorious grounds for appeal. In response to his attorney's motion, Lewis filed a brief contending that he did have meritorious grounds for appeal, including his claim that the State had improperly destroyed evidence. R. 8 Ex. O at 21-24. But this claim was plainly beyond the scope of the second appeal: Lewis had not raised the *Brady* claim in the successive petition, and the scope of the second appeal was limited to whether or not the trial court had properly disposed of that petition, as opposed to his original petition. Lewis was obliged to raise the *Brady* claim in the first appeal, dealing with the dismissal of his original post-conviction petition. Having failed to do so, he procedurally defaulted the claim.

Lewis suggests that it is unduly formalistic and unfair to him to compartmentalize the two appeals in this way. Among other things, he notes that the two appeals were pending before the appellate court at the same time, the appellate court took note of the fact that there were two appeals (*see People v. Lewis, supra*, No. 1-00-0128, Order at 1; R. 8 Ex. M-2 at 1), and, finally, when the appellate court

affirmed the dismissal of Lewis's successive post-conviction petition, the court noted that it did so after reviewing both Lewis's brief as well as the entire record below (*Lewis*, No. 1-00-0128, Order at 2; R. 8 Ex. M-2 at 2).

We disagree. Although the two appeals certainly were related in the sense that they arose from a single post-conviction proceeding in the trial court, and although they proceeded on parallel tracks through the appellate court, they nonetheless remained distinct: they were filed separately based on two different orders of the trial court, they were briefed separately (in the first instance, by a public defender on Lewis's behalf, and in the second instance, by Lewis himself when his appointed counsel sought the court's permission to withdraw), and they were decided by separate orders. The appeals were never formally or functionally consolidated in such a way that the parties were invited or permitted to effectively merge the two appeals in their briefing. On the contrary, the documents filed by the parties reflect their understanding that the two appeals were distinct. *See* R. 8 Ex. K at 3 (Lewis's opening brief in first appeal) ("The supplemental post-conviction petition filed on November 16, 1999, and denied on December 14, 1999, is not part of this appeal."); R. 8 Ex. N at 3 (*Finley* motion) (noting that Lewis had filed two separate appeals); *id.*, attachment (Lewis's second pro se notice of appeal) (noting that the order appealed from was the order of December 14, 1999, described as "Post Conviction Petition Amended Order").

In short, Lewis could not properly raise Claim 2 in the second appeal from the denial of his successive petition as it was beyond the limited scope of that appeal; he defaulted that claim when his attorney failed to raise that *Brady* claim in the first appeal, from the denial of his original post-conviction petition. Lewis has not established any basis for excusing this default. Therefore, as with Claims 1 and 3, habeas relief on Claim 2 is foreclosed.

We turn now to the attorney ineffectiveness claims. Claims 4(a)-(d) all were set forth in Lewis's original post-conviction petition. The pertinent question, however, is whether Lewis properly appealed the summary dismissal of these claims. At this juncture, Lewis is not pursuing relief on Claim 4(b), leaving us to consider Claims 4(a), 4(c), and 4(d). We agree with the district court that Lewis procedurally defaulted each of these claims.

Before going further, we pause to consider whether, as Lewis asserts, the district court improperly allowed the State to raise in an untimely manner several instances of procedural default. As we noted earlier, in its original answer to Lewis's habeas petition, the State only contended that two of the four ineffectiveness claims, Claims 4(a) and 4(b), had been procedurally defaulted. The district court agreed as to Claim 4(b), but disagreed as to Claim 4(a). It then ordered the State to file an answer responding to the merits of Claims 4(a), 4(c), and 4(d). Instead, the State, after first missing the deadline for that answer and then securing an extension of time from the court, filed a supplemental memorandum asserting a new theory as to why Claim 4(a) had been procedurally defaulted and contending for the first time that Claims 4(c) and 4(d) also had been defaulted. The district court ordered that memorandum stricken, reasoning that it did not address the merits of these claims, as the court had directed. However, the court allowed the State to file a new supplemental answer in which it both responded to the merits of the claims and asserted the new procedural default arguments. Ultimately, the court found these procedural default arguments to be well taken, rejecting Lewis's contention that the State had waived these arguments by not asserting them in its original answer to the petition.

The district court acted well within its authority to recognize procedural default arguments not raised in the State's

original answer.[3] As Lewis rightly points out, a petitioner's procedural default does not implicate the jurisdiction of a federal habeas court. Rather, it is an affirmative defense, and like other defenses it is one that the State can waive. *Trest v. Cain*, 522 U.S. 87, 89, 118 S. Ct. 478, 480 (1997). But waiver in the true sense occurs when a party intentionally relinquishes a known right. *E.g.*, *Perruquet v. Briley*, No. 02-2981, 2004 WL 2600589, at *7 (7th Cir. Nov. 17, 2004). One might infer that the State has implicitly waived a procedural default defense when it has asserted that defense as to some of the petitioner's claims but not as to the particular claim in question. *See id.* at *8 (coll. cases). That is not what occurred here. Although the State failed to set forth in its original answer the procedural defaults that it asserted in its supplemental answer, neither did it respond to the merits of Claims 4(a), 4(c), or 4(d). On the contrary, in its original answer, the State did not recognize that Lewis had asserted the instances of alleged ineffectiveness underlying Claims 4(c) and (d) in his pro se petition, and consequently the State did not respond to those claims at all. As to these two claims, then, the State's supplemental answer, which contended that Lewis had procedurally defaulted these claims, was its first answer. As for Claim 4(a), the State *did* assert in its original answer that Lewis had committed a default. However, its theory as to why Lewis had committed a default (that Lewis had failed to assert the claim in a petition for leave to appeal to the Illinois Supreme Court) was one that the district court rejected in its

---

[3]  Insofar as Lewis is complaining about the district court's willingness to extend the deadline by which the State was to file its supplemental answer, the court did not abuse its discretion. *See* Fed. R. Civ. P. 6(b)(2) (authorizing court to enlarge time after expiration of original deadline); § 2254 Rule 11 (making Federal Rules of Civil Procedure applicable to proceedings under § 2254); *see also Lemons v. O'Sullivan*, 54 F.3d 357, 364-65 (7th Cir. 1995); *Bleitner v. Welborn*, 15 F.3d 652, 654 (7th Cir. 1994).

first opinion. In its supplemental answer, the State then advanced a different theory of default—that Lewis had not properly pursued an appeal of Claim 4(a) in the Illinois Appellate Court. In sum, although the State did not raise these default theories in as timely manner as it might (and should) have done, the State's conduct does not evince an intent to waive the procedural default defense. *See id.* In the absence of a waiver, the decision whether to allow the State to interpose the defense somewhat belatedly was one committed to the district court's sound discretion. *See id.* at *9 (noting that federal courts have discretion to reach procedural default defense that State raises belatedly and even to raise the subject of procedural default sua sponte). In view of the important interests in comity, federalism, and judicial efficiency implicated by a habeas petitioner's procedural default, and considering that the proceeding in the district court was not far advanced when the State awoke to its additional theories of procedural default, the district court did not abuse its discretion here in electing to entertain those theories. We therefore proceed to consider whether, as the State contends and as the district court found, Lewis procedurally defaulted Claims 4(a), 4(c), and 4(d).

As with Claim 2, the procedural missteps with respect to these claims stem from the dual appeals that Lewis took from the trial court's dismissal of his original and successive post-conviction petitions. Because Claims 4(a), (c), and (d) were asserted in Lewis's original post-conviction petition, he was obligated to raise them on appeal from the dismissal of that petition. He did not do so, however: his attorney pursued only a sub-part of Claim 4(d) that is no longer pertinent (Lewis no longer pursues it). Lewis never attempted to appeal Claim 4(c) at all. He did attempt to assert Claim 4(a) and the remaining (and relevant) portion of Claim 4(d) in the second appeal, from the denial of his successive petition, in the brief he filed in response to his

attorney's motion to withdraw. But as we have explained with respect to Claim 2, the second appeal was not the appropriate forum for Lewis to raise claims asserted in his original post-conviction petition. Lewis's decision, through his counsel, not to assert Claims 4(a), 4(c), or 4(d) in the first appeal constituted a procedural default that bars federal habeas relief as to these claims.[4]

Lewis contends that this default is immaterial as to Claims 4(a) and 4(d), because in disposing of the second appeal, the Illinois Appellate Court implicitly reached the merits of Claims 4(a) and 4(d) rather than disposing of those claims on the independent, procedural basis that those claims were beyond the scope of that appeal. *See*, *e.g.*, *Hampton v. Leibach*, 347 F.3d 219, 242 (7th Cir. 2003) ("A petitioner's procedural default will bar federal habeas review only if the state court actually relied on that default as an independent basis for its decision.") (citing *Harris v. Reed*, 489 U.S. 255, 261-62, 109 S. Ct. 1038, 1042 (1989)). Lewis points out that after considering his appointed counsel's motion to withdraw pursuant to *Finley* along with his own brief in response (which cited Claims 4(a) and 4(d) as meritorious grounds for appeal), the appellate court elected to not only grant the withdrawal motion but also to summarily affirm the judgment. In *Wilkinson v. Cowan*, 231 F.3d 347, 352 (7th Cir. 2000), we held that when the Illinois Appellate Court, in response to a *Finley* motion, had not only granted an attorney's motion to withdraw but also summarily affirmed the dismissal of the petitioner's post-conviction

---

[4] The parties go on to consider whether the single petition for leave to appeal that Lewis subsequently filed with the Illinois Supreme Court (together with the motion to amend that petition) could properly have embraced both of the appeals, as was apparently Lewis's intent. We need not reach that question, as Lewis plainly had committed a default as to his ineffectiveness claims before he reached the Illinois Supreme Court.

petition, the court had rendered a merits judgment as to each of the claims asserted in that petition. Relying on *Wilkinson*, Lewis posits that when the appellate court summarily affirmed the dismissal of his successive post-conviction petition, it necessarily considered each of the claims he had raised in the pro se brief he filed in opposition to his lawyer's *Finley* motion, including Claims 4(a) and 4(d), and rejected those claims on their merits. Any procedural misstep thus was overlooked, as Lewis sees things, and the door remained open to relief in habeas corpus on these two claims.

But Lewis construes our holding in *Wilkinson* far too broadly. The precise question that we addressed in that case was whether a habeas petitioner could be charged with a procedural default in the Illinois Appellate Court when, in the face of his counsel's motion to withdraw under *Finley*, the petitioner had neither responded to the motion by identifying meritorious issues that the court should address nor filed an appellate brief of his own pursuing such issues. The State argued that in failing to take either step, the petitioner had effectively abandoned all of the issues that he had raised in the trial court. We rejected that assertion. Because the appellate court had not invited the petitioner to respond to his attorney's motion to withdraw or to file a merits brief in his attorney's stead, nor had it warned him that he might forfeit the claims he had raised in the trial court by failing to take either step, we did not believe that he could be charged with a procedural default. *Id.* at 350-52. At the same time, because the appellate court had elected to summarily affirm the trial court upon review of the record rather than dismissing the appeal as frivolous, we concluded that the appellate court's disposition was properly construed as one based on the merits of the petitioner's claims rather than one based on any procedural misstep (e.g., failing to file a pro se brief) that he might have committed. *Id.* at 352. Notably, because the petitioner in *Wilkinson*

had not filed a brief in the state court appeal, our opinion said nothing about whether a summary affirmance can be construed as reaching the merits of any and all issues that might have been raised in a brief, even if they were beyond the scope of the appeal. At most, *Wilkinson* stands for the proposition that when a state appellate court elects to summarily affirm the judgment below without having invited the appellant to identify the issues he wishes to pursue on appeal, we will construe the affirmance to have reached the merits of each issue that the petitioner properly raised in the court below.

So understood, *Wilkinson* is of no help to Lewis. The Illinois Appellate Court's decision, following a review of the record, to summarily affirm the dismissal of Lewis's successive post-conviction petition reasonably can be construed only to reach those claims that Lewis raised in his successive petition. *See id.* at 351 (summary affirmance, pursuant to *Finley*, of trial court's decision to dismiss post-conviction petition "can only be understood as a merits-based decision with respect to each of the claims raised in the petition"). Neither Claim 4(a) nor Claim 4(d) was included in Lewis's successive petition; those claims were, as we have discussed, set forth in the original petition that was the subject of a separate appeal. Because those claims were not presented to the trial court in the successive petition, the trial court's judgment (i.e., the dismissal of the successive petition) cannot possibly be construed as reaching those claims, nor can the summary affirmance of the judgment be understood to do so. Although Lewis's appellate brief argued these claims, nothing in the appellate court's summary order mentions those claims or signals the court's willingness to expand the scope of the appeal to claims that the trial court had not reached in the particular decision under review. Both the United States Supreme Court and this court have held that an appellant does not fully and fairly present a federal claim to the state courts when he raises that claim for the

first time in a petition for rehearing before the state appellate court or in a petition asking the state supreme court to grant him leave to appeal. *Castille v. Peoples*, 489 U.S. 346, 109 S. Ct. 1056 (1989); *Everette v. Roth*, 37 F.3d 257, 261 (7th Cir. 1994) (coll. cases). Consistent with those holdings, we reject the notion that a petitioner fairly presents his federal claim to the state courts when he raises that claim for the first time in an appellate brief after his lawyer has filed a motion to withdraw under *Finley*.

Lewis had the opportunity to fairly present Claims 4(a) and (d) to the Illinois Appellate Court. They were among the claims asserted in his original post-conviction petition, and Lewis could have raised those claims in appealing the summary dismissal of his original petition. Instead, his lawyer chose to challenge only the dismissal of a portion of Claim 4(d) that is irrelevant. Having failed to raise these claims in the proper appeal, Lewis procedurally defaulted those claims.

We reject Lewis's contention that *Massaro v. United States*, 538 U.S. 500, 123 S. Ct. 1690 (2003), permits us to overlook the procedural defaults he committed as to his claims of attorney ineffectiveness. *Massaro* holds simply that a federal prisoner may assert an ineffectiveness claim on collateral review under 28 U.S.C. § 2255 even if the claim was one that he could have raised (but did not) on direct appeal. *Massaro* is entirely silent on the subject of state prisoners making ineffectiveness claims under section 2254, and it certainly does not purport to overrule ample precedent holding that habeas petitioners must present their claims of attorney ineffectiveness to the state courts before seeking relief in federal court. *See Duckworth v. Serrano*, 454 U.S. 1, 102 S. Ct. 18 (1981) (per curiam); *see also Stewart v. Smith*, 536 U.S. 856, 861, 122 S. Ct. 2578, 2582 (2002); *Edwards v. Carpenter*, *supra*, 529 U.S. at 452-54, 120 S. Ct. at 1591-92; *Murray v. Carrier*, *supra*, 477 U.S. at 489, 106 S. Ct. at 2646. To construe *Massaro* as Lewis

proposes would permit a habeas petitioner to deprive the state courts of the first opportunity to correct a constitutional error and in this way undermine the interests in comity and federalism underlying both the procedural default doctrine as well as the statutory limitations on habeas relief. *See Sweet v. Bennett*, 353 F.3d 135, 140-41 (2d Cir. 2003); *see also Gomez v. Jaimet*, 350 F.3d 673, 678 (7th Cir. 2003). In short, *Massaro* does not allow us to ignore these procedural defaults.

Lewis has not demonstrated an equitable basis for excusing any of the defaults he committed as to the claims on which he now seeks relief. Accordingly, he may not seek federal habeas relief on these claims. The district court properly dismissed them.

## III.

Because Lewis procedurally defaulted each of the claims he asserted in his petition for habeas corpus, and because he has not established an equitable basis for excusing the defaults, relief in habeas corpus is unavailable to him. We therefore affirm the dismissal of his petition. We thank Lewis's attorneys for their vigorous advocacy on his behalf.

A true Copy:

    Teste:

                     _____
                     ***Clerk of the United States Court of Appeals for the Seventh Circuit***