In the

# United States Court of Appeals
## For the Seventh Circuit

————————

No. 06-2184

LESLIE STANLEY,

*Petitioner-Appellee*,

*v.*

KEN BARTLEY,

*Respondent-Appellant*.

————————

Appeal from the United States District Court
for the Southern District of Illinois.
No. 00-895-DRH—**David R. Herndon**, *Judge*.

————————

ARGUED SEPTEMBER 7, 2006—DECIDED OCTOBER 17, 2006

————————

Before POSNER, EASTERBROOK, and RIPPLE, *Circuit Judges*.

POSNER, *Circuit Judge*. In 1994 Leslie Stanley was tried by a jury and convicted of the first-degree murder the year before of Sammie Wilborn, and was sentenced to 35 years in prison. After exhausting his state remedies, *People v. Stanley*, 775 N.E.2d 1078 (Ill. App. 2000) (unpublished opinion), petition for leave to appeal denied, 738 N.E.2d 934 (Ill. 2000) (without opinion), he sought habeas corpus, claiming that his trial lawyer had given him ineffective assistance. He prevailed in the district court after an evidentiary hearing, and the state appeals.

According to the state's key witness, James Dean, Dean was a passenger with Stanley and Wilborn in Stanley's car around midnight on December 21, 1993, cruising the slums of Centreville, Illinois. All three were members of the "Metros" gang and Dean and Wilborn had been snorting cocaine. Wilborn said he had to pee and Stanley stopped the car and he and Wilborn got out. Dean watched the two of them because he had seen an automatic pistol, black with a brown handle, of German make, on the seat beside Dean—and now it was gone. Stanley stood behind Wilborn while the latter was urinating and Dean saw Stanley shoot Wilborn in the back. After hearing a second shot, Dean took off running, and heard another shot. He did not report the shooting to anyone. Wilborn was later found dead in a street. Stanley visited Dean a few days later and told him, according to Dean, that Wilborn "had messed . . . up" an eight-ball of cocaine that Stanley had given him.

A cocaine addict and convicted felon, Dean was not a highly credible witness; after all, he might well have been the murderer. But Stanley's sister, Dwana Stanley, also testified at trial. The prosecutor led off his questioning of her by saying "I'm going to call your attention to December 22nd, on the morning, early morning of December 22nd of last year" (1993). She then testified that her brother had come into her bedroom about 10 p.m. (which would have been before the shooting, but her statement to the police had said that her brother had come into her room at midnight) and told her that he wanted to talk to her and that he'd "shot somebody, killed somebody." A short time later, her testimony continued, he had come back into her room, and he had a gun with him, "a little black, I guess, twenty-two," with a clip (which would indicate that it was an automatic rather than a revolver); .22 caliber casings were found by Wilborn's body, though the gun itself was never found.

There were other witnesses, but their testimony was distinctly secondary. It was the combination of Dean's and Dwana Stanley's evidence that convicted Leslie Stanley.

His lawyer, who had had only one brief meeting with his client before the trial, prepared for the trial by reading the statements that prospective witnesses had given the police. He did not interview any of them, though he may (he was not sure) have encountered Dwana Stanley briefly in the hallway outside the courtroom shortly before the trial began. His trial strategy, he explained in the postconviction proceedings, was to listen to the witnesses' direct testimony and cross-examine them regarding any discrepancies between that testimony and their pretrial statements that were harmful to his client.

Among the prospective witnesses whom he neither interviewed nor called as a witness was Robert Brock. The state didn't call Brock as a witness either; so he did not testify at the trial. Brock's brief statement to the police had reported that a few hours before the murder Dean (the state's principal witness) and Wilborn (the murder victim) had had a quarrel over a cocaine shooter, and the quarrel had involved pushing and shoving. In cross-examining Dean, the defendant's lawyer asked him whether he'd had an "argument" with Wilborn, and Dean said yes. But he answered "no" to the lawyer's further question whether it had been "a pretty good argument" involving "pushing and shoving." Dean said it had not been "serious." Not only was this inconsistent with Brock's statement, which the lawyer had, but at the federal habeas corpus hearing Brock testified that in the course of the "quarrel" Wilborn had struck Dean with a wine bottle and Dean had punched Wilborn in the head and knocked him down and that when the fight was over Dean had told Wilborn ominously,

"I'll catch your ass later on." Brock also testified that Wilborn was despised by the other Metros.

Had he been interviewed by the defendant's lawyer, Brock might have told him these details. That would have enabled a damaging cross-examination of Dean, who may have been the murderer—a suspicion that would have been heightened by his denying that his fight that day with Wilborn was serious. Brock's testimony indicated that Dean had a motive to kill Wilborn. And he had as good an opportunity as Stanley to do so.

The jury would have been particularly unlikely to have convicted Stanley had it not been for the testimony of his sister. The prosecutor told the jury in his closing argument that "the thing that corroborates Mr. Dean's testimony over anything else in this case, is the testimony of Leslie Stanley's own flesh and blood, Dwana, his sister, the wife and mother of four, who lived in the house where Leslie Stanley lived." She had told the police that she'd seen him with a gun not on the night of his confession to her but a week before. And in the postconviction proceedings she testified that he might have "confessed" to her not on December 21 or 22 but on December 15, a week before the murder, which was consistent with her having thought she'd seen the gun then and with her testimony at trial that her brother had seemed to be drinking the night he confessed and when he drank he was "always saying like he's gonna beat someone up, or kill him a nigger, or something like that."

The defendant's lawyer didn't cross-examine her at trial about the date of the confession or the date on which she had seen her brother with the gun. And he failed to object to the prosecutor's having led her by prefacing his

question about the confession with the statement that he was directing her attention to the night of the murder.

And Dean, when he testified in the postconviction proceedings, said that he had been drinking the night of the murder (he had denied that at trial), that he hadn't seen the defendant shoot Wilborn, and that in fact he didn't "know who had the gun, really, man."

The Illinois courts nevertheless determined that the lawyer's assistance to defendant Stanley had not been ineffective. If in so determining the courts applied the correct constitutional standard, that of *Strickland v. Washington*, 466 U.S. 668 (1984), we must affirm unless convinced that the determination was unreasonable, *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Eckstein v. Kingston*, 460 F.3d 844, 848 (7th Cir. 2006), while if they applied the wrong standard we must apply the correct one ourselves. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Martin v. Grosshans*, 424 F.3d 588, 592 (7th Cir. 2005). In Stanley's direct appeal, after correctly reciting the *Strickland* standard, the Illinois Appellate Court concluded that even if (as the court did not believe) his lawyer's performance had fallen below minimum professional standards, "Stanley was not so prejudiced by any of the alleged mistakes that the outcome of the trial would have been any different." That was incorrect; to show the requisite prejudice from incompetent representation, all Stanley had to show was, as the court earlier had correctly stated, "a reasonable probability that, but for counsel's unprofessional errors, the outcome of the trial would have been different." To show a reasonable probability of a different outcome is a less demanding burden than to show that the outcome *would* have been different. But the Illinois court is entitled to the benefit of the doubt. Having expounded the well-known standard correctly on the previous

page of its opinion, it is more likely that the court stated its conclusion imprecisely than that it applied a different standard. *Woodford v. Visciotti*, 537 U.S. 19 (2002) (per curiam); *Floyd v. Hanks*, 364 F.3d 847, 852 (7th Cir. 2004); *White v. Roper*, 416 F.3d 728, 732-33 (8th Cir. 2005); *Parker v. Secretary for Dept. of Corrections*, 331 F.3d 764, 785-86 (11th Cir. 2003).

But this makes no difference to the outcome of the state's appeal, because the state courts' determination that Stanley had had effective assistance of counsel at his trial was an unreasonable application of the *Strickland* standard. The state does not even bother to defend the ruling that the lawyer provided minimally competent representation. To fail to interview any witnesses or prospective witnesses was a shocking dereliction of professional duty in a case in which the state's evidence, though sufficient to convict the defendant of murder beyond a reasonable doubt, was far from compelling. *Davis v. Lambert*, 388 F.3d 1052, 1064 (7th Cir. 2004); *Washington v. Smith*, 219 F.3d 620, 633-34 (7th Cir. 2000); *Montgomery v. Petersen*, 846 F.2d 407 (7th Cir. 1988); *Anderson v. Johnson*, 338 F.3d 382, 393-94 (5th Cir. 2003); *Lord v. Wood*, 184 F.3d 1083, 1095-96 (9th Cir. 1999); *United States v. Gray*, 878 F.2d 702, 713-14 (3d Cir. 1989). The lawyer could not know how complete or accurate a prospective witness's statement to the police was without talking to the witness. Of course it is possible that interviewing Dean and Dwana Stanley and Brock would have revealed nothing of value to the defense. The testimony they gave at the postconviction proceedings came years after the trial and they might not have told the lawyer the same things before the trial. But that is the issue not of the lawyer's competence but of the consequences of his incompetence, to which we now turn.

When a defendant's lawyer has failed to interview key actual or potential witnesses, as in this case, and in postconviction proceedings the witnesses give testimony that the defendant contends a competent lawyer could have elicited by interviewing them before trial and could have used effectively at the trial, two questions arise. The first is whether they actually would have told the lawyer the same thing before trial, and the second is whether, if they had, the defendant would have had a reasonable chance of being acquitted. Although it is entirely possible that Dean and Dwana Stanley and Robert Brock said things at the postconviction proceedings that they would not have confided to the defendant's lawyer before trial, the state courts made no findings on the question. The courts did make clear that they didn't believe that Dwana Stanley had received her brother's "confession" a week before the murder, but that is irrelevant. The question is whether she would have so testified had the lawyer interviewed her and at the interview explored her admitted dubiety about the date, and if so whether the jury would have discredited the confession. *Kyles v. Whitley*, 514 U.S. 419, 435 (1995). For the issue is not whether Stanley is innocent, but whether if he had had a competent lawyer he would have had a reasonable chance (it needn't be a 50 percent or greater chance, *Miller v. Anderson*, 255 F.3d 455, 459 (7th Cir. 2001)) of being acquitted; given that guilt must be proved beyond a reasonable doubt, guilty people are often acquitted.

Similarly, Dean, had the lawyer interviewed him before trial, might have told the lawyer things about the murder, the gun, and the fight with Wilborn that would have enabled effective cross-examination. And if the lawyer had interviewed Brock, and Brock had told him the same things that he later testified to in the habeas corpus hearing, the lawyer would not have been content with Dean's reply

on cross-examination that there was no pushing and shoving and that it wasn't even a serious "argument." Had Dean persisted in these denials, Brock could have been called as a defense witness. Dean might have been thoroughly discredited. Had the jury thought him a liar and possibly the murderer, and Dwana Stanley an unreliable witness because of uncertainty about dates, Leslie Stanley would have had a decent shot at acquittal. The state courts' contrary conclusion is not reasonable, and so the judgment of the district court is

AFFIRMED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*