# In the

# United States Court of Appeals

## For the Seventh Circuit

————————

No. 06-3235

DONCHII MALONE,

*Petitioner-Appellant,*

*v.*

J.R. WALLS, Warden,

*Respondent-Appellee.*

————————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 8008—**George W. Lindberg**, *Judge.*

————————

ARGUED JANUARY 10, 2008—DECIDED AUGUST 18, 2008

————————

Before EASTERBROOK, *Chief Judge*, and RIPPLE and
ROVNER, *Circuit Judges*.

RIPPLE, Circuit Judge. Donchii Malone was convicted of
two counts of first degree murder in the Circuit Court of
Cook County, Illinois. After challenging his conviction in
the state courts of Illinois, Mr. Malone filed a petition for
a writ of habeas corpus in the United States District Court
for the Northern District of Illinois. The district court
dismissed Mr. Malone's petition but granted him a certifi-

cate of appealability. For the reasons set forth in the following opinion, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

# I

## BACKGROUND

### A. Facts and State Court Proceedings

On the morning of July 22, 1986, Larry Lane, LaRoyce Kendle and Antonio Stewart were in a car outside of Lane's apartment building. Michelle Davis and two men, later identified by witnesses as Phillip Taylor and Mr. Malone, approached the car. Davis asked the three men in the car if they wanted to fight. Kendle and Lane exited the car. Shots were fired, resulting in the deaths of Kendle and Lane. Stewart, Davis, Taylor and Mr. Malone fled the scene.

### 1.

Davis, Taylor and Mr. Malone were arrested and charged with the murders of Lane and Kendle. Although all three of the defendants were tried jointly, Mr. Malone exercised his right to be tried by a jury, while Davis and Taylor opted for a bench trial.

During the trial, two eyewitnesses, Stewart and Oneida Tate, testified on behalf of the State. A third eyewitness, Anthony Villanueva, was called by Taylor's counsel; Mr. Malone's counsel chose not to call Villanueva, and,

therefore, Villanueva testified outside the presence of Mr. Malone's jury.

Stewart, who was fifteen at the time of the events in question, testified that, while sitting in Lane's car, Davis approached the car. Davis asked Lane if "all three of us did we want to box." Tr. at 493. Lane responded that they did not want to fight. Kendle and Lane then exited the car, and Davis repeated her inquiry. Again, Lane responded that they did not want to fight. After some further discussion, Mr. Malone asked Lane, "[W]hat was up." *Id.* at 496. Lane responded, "What you want to be up?" *Id.* at 497. At that point, Mr. Malone said, "I'm going to show you what's up"; Mr. Malone backed away from the car and pulled a revolver from his waist. *Id.* According to Stewart, Mr. Malone then pointed the weapon at Lane's head and fired twice. Stewart further stated that Kendle attempted to re-enter the car, but Mr. Malone also shot him twice. Stewart testified that Davis watched this scene and laughed and that Taylor pulled a gun and pointed it at him. At that point, Stewart turned and ran away. As he ran, Stewart heard two additional shots ring out.

Later, after he believed that Mr. Malone, Davis and Taylor were out of the area, Stewart returned to the scene, yelling "the bitch popped 'em, the bitch popped 'em." *Id.* at 528. When the police arrived, Officer Teddy Williams interviewed Stewart. On cross-examination, Stewart admitted that, upon first talking with the police, he identified only Taylor and Davis as being involved in the shooting. Although he knew Mr. Malone, Stewart

did not identify Mr. Malone as being involved until two o'clock that afternoon, after viewing a photo array at the police station. He identified Mr. Malone in a lineup at approximately 4:30 p.m.[1]

The jury also heard the testimony of Oneida Tate. Tate lived in the apartment overlooking the crime scene. On the morning of the shooting, Tate was awakened by people talking on the street below her apartment. She described one of the men as wearing green hospital pants and a yellow t-shirt; Tate stated that she did not see this man's face. She described the second man as dark-skinned and wearing a Chicago Cubs hat, a dark jacket and blue jeans. Although Tate did not know personally the man in the Cubs hat, she testified that she recognized him as being from the neighborhood. After she had returned to bed, Tate heard shots fired. From the window, she saw Davis running down the street with a gun and two men running in the opposite direction. She heard Stewart shout "the bitch popped 'em." Tr. at 848. Tate called the police immediately. She was interviewed later that after-

---

[1] In addition to testifying about the events surrounding the shooting, Stewart testified that there had been an altercation on the evening prior to the shooting that involved all of the parties except Mr. Malone. Specifically, he, Lane and Kendle were together when Lane "snatched [Taylor's] hat off" because the hat displayed a symbol of a rival gang. Tr. at 487. Lane set the hat on fire and gave it to Stewart. Stewart then threw the hat into a crowd of people, and it hit Davis on the left side of her face. Stewart testified that Davis told him that "[s]he was going to get me." *Id.* at 489.

noon, and, in the evening, picked Mr. Malone out of a lineup as one of the individuals she had seen prior to the shooting. At trial, Tate identified Mr. Malone as the individual she had seen wearing the Cubs hat.

In addition to Stewart and Tate, co-defendant Taylor called Anthony Villanueva to testify. Villanueva witnessed the events on the morning of July 22, 1986, from his basement apartment, which looked directly out onto the scene of the shooting. Villanueva testified that, prior to the shooting, he had been friends with both Lane and Kendle. He also stated that Taylor was an "associate"—someone he would speak to regularly, but whom Villanueva did not consider to be a "friend." Tr. at 940-41. Finally, he testified that he knew Davis by sight as "Michelle," but did not know her last name. On the morning of the shooting, Villanueva was getting ready for school and observed Davis, Stewart, Lane, Kendle and two other men, whom he did not know, out on the street; Davis and Stewart were arguing. Villanueva was able to see the other two men for approximately two to three minutes before the shooting. After the shooting, Villanueva heard Davis say "they got popped" and heard Stewart say that Davis "didn't have to do all that." *Id.* at 938.[2] Villanueva further testified that Taylor was not one of the two men he had seen. On cross-examination, the prosecutor asked Villanueva whether he knew a person

---

[2] After the shooting, Villanueva spoke to Detective Jack Markham. Villanueva told Markham that he had seen Davis and Stewart running away from the scene after he heard the gunshots.

named Donchii Malone; Villanueva responded that he did not know him, but had heard of him. *Id.* at 941-42. Villanueva further stated that he would not "know Donchii Malone if he saw him" and would not know if the person "who did the shooting was a person by the name of Donchii Malone." *Id.* at 942. The prosecutor then asked Villanueva the following question: "Of the six people that you saw out there at the time of the shooting. Would you look around the courtroom and tell us if you see any of those six people in here anywhere in the court-room?" *Id.* at 950. In response, Villanueva pointed to Davis; although Mr. Malone was present in the court-room at the time, Villanueva did not identify him as one of the individuals present during the shooting. As noted above, Villanueva's testimony was presented outside the presence of Mr. Malone's jury; after hearing this testimony, Mr. Malone's counsel did not seek to reopen Mr. Malone's case to offer Villanueva's testimony.[3]

At the conclusion of the evidence and arguments, Mr. Malone's co-defendants were acquitted by the court. Mr. Malone, however, was convicted by the jury.

---

[3] In addition to Villanueva's testimony, the jury also heard testimony from Officer Teddy Williams. Officer Williams testified to his interview with Stewart following the shooting. During that interview, Stewart described the shooter as wearing a "Cubs hat, T-shirt and blue jeans" and as having "brown eyes, black hair, light complexion, [and] no scars," Tr. at 916; Mr. Malone, however, is not light skinned. Although Mr. Malone's counsel did cross-examine the State's witnesses, counsel did not use Stewart's earlier statements to the police to impeach his in-court testimony.

During his death penalty hearing, Mr. Malone's counsel called Detective Markham and questioned him about Villanueva's account of the events surrounding the shooting. The State's attorney objected. After an explanation regarding the facts that Mr. Malone's counsel sought to elicit, the court asked the following questions:

Court:  Why didn't you go into those at trial?

Counsel:  As a matter of trial strategy, I didn't go into them at that time but this conversation that Detective Markham had with Anthony Villanueva, I believe, your Honor, is very relevant for the purpose of the death penalty sentencing here.

Court:  Well, would it not be of assistan[ce] to the jury if it was relevant?

Counsel:  Well, as a matter of trial strategy, I didn't ask Detective Markham during the trial but at this sentencing hearing, I, your Honor, would like to put into evidence what Anthony Villanueva told Detective Markham.

Tr. at 1139. After briefly reviewing Villanueva's testimony, the trial court allowed Mr. Malone's counsel to proceed; the court stated: "I recognize it is hearsay and I recognize that, for whatever reason, [counsel] had an opportunity to cross examine this witness and did not. But I will let him proceed." *Id.* at 1141.

After the hearing, the court sentenced Mr. Malone to natural life in prison. In rendering its sentence, the court expressed doubts about the reliability of Stewart's testimony: "The testimony of the principal witness, Antonio Stewart . . . is certainly a novel experience for the jury and

the judge. Here is a fellow who was mixed up with these gangs, who was certainly high on something that night. I couldn't even be sure what time it was when he saw anything." Tr. at 1217.

Mr. Malone filed an appeal. In his appeal, Mr. Malone did not raise any claim of ineffective assistance of trial counsel; appellate counsel mistakenly believed that the issue could not be raised on direct appeal.[4] The state appellate court affirmed Mr. Malone's conviction, and the Supreme Court of Illinois denied leave to appeal.

**2.**

Mr. Malone then sought post-conviction relief in state court. Among the issues raised in the petition were ineffectiveness of trial counsel for failing to call Villanueva and ineffectiveness of appellate counsel for failing to raise trial counsel's performance on direct review. The post-conviction court ruled that appellate counsel had not provided ineffective assistance. With respect to ineffective assistance of trial counsel, the court stated:

> Now, no affidavit from Anthony Villanueva. Perhaps had the evidence been stronger concerning the position you assert, an affidavit would not be necessary. However, in order to accept the petitioner's position, I would have to infer and read between the lines and draw inferences. And that's not appropriate for post

---

[4] In state post-conviction proceedings, appellate counsel filed an affidavit asserting that he had been ineffective for failing to raise trial counsel's ineffectiveness.

> conviction. And so, given that, you should have an affidavit and you don't. And I'm not going to accept that you that your arguments concerning what certain testimony meant, inferences can be derived is appropriate for purposes of this proceeding because I don't think that it is.

S.A. 37. The state post-conviction court went on to deny summarily the ineffective assistance claims and all other post-conviction claims with the exception of the allegation that Mr. Malone's due process rights had been violated through the State's use of Stewart's allegedly perjured testimony.[5] Following an evidentiary hearing, however, the court determined that Stewart's initial testimony implicating Mr. Malone was credible.

In the appeal following the denial of post-conviction relief, Mr. Malone raised two issues. The first issue was stated accordingly:

> Donchii Malone was denied the effective assistance of counsel on direct appeal where appellate counsel failed to raise trial counsel's ineffectiveness: (A) in not investigating or calling Anthony Villanueva, a witness in co-defendant's case, as a witness in the defense case-

---

[5] In 1992 and again in 1995, Stewart filed affidavits recanting his trial testimony and stating that the State had pressured him to identify Mr. Malone. In a 1999 affidavit, Stewart then recanted the earlier affidavits saying that those had been executed in response to threats by Mr. Malone's associates. However, when the evidentiary hearing began, Stewart repudiated the 1999 affidavit and testified consistent with the 1992 and 1995 affidavits.

in-chief to rebut the testimony of the state's star witness, Antonio Stewart; and (B) in not adducing testimony of the police officer Teddy Williams, who also testified at co-defendant's trial and who would have contradicted key witness Stewart's description of the shooter. Where the evidence was extremely close and where the state's case against the defendant hinged on the untrustworthy testimony of one witness (Stewart), trial counsel's lapses clearly affected the outcome of Malone's case before his jury.

R.19, Ex. E at I.

In resolving this issue, the appellate court noted that Mr. Malone was contending "that he was denied the effective assistance of counsel at trial" by failing to call Villanueva or Williams. R.19, Ex. H at 6. The court then observed: "Because this testimony was part of the record on appeal, defendant could have raised this issue on direct appeal. Generally, defendant's failure to raise this issue on direct appeal would result in waiver. However, the waiver rule is relaxed when a defendant alleges that failure to raise an issue on appeal constituted the ineffective assistance of counsel." *Id.* at 6-7 (citations omitted). The appellate court then correctly identified *Strickland v. Washington*, 466 U.S. 668 (1984), as the standard according to which counsel's performance should be measured. It described the standard accordingly:

A defendant must show both a deficiency in counsel's performance and prejudice resulting from the alleged deficiency. *People v. Edwards*, 195 Ill. 2d 142, 162 (2001), citing *Strickland*, 466 U.S. at 687. To show a deficiency in counsel's performance a defendant must establish

that counsel's performance fell below an objective standard of reasonableness. *Edwards*, 195 Ill. 2d at 162-63. To demonstrate prejudice a defendant must establish that there is a reasonable probability, that, but for the alleged errors, the outcome of the proceeding would have been different. *Edwards*, 195 Ill. 2d at 163. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. *Strickland*, 466 U.S. at 694.

*Id.* at 7 (parallel citations omitted).

Turning to "the underlying issue" in the appeal—"whether trial counsel was ineffective for failing to call Villanueva and Williams"—the appellate court believed that it was "appropriate to begin our analysis with an examination of the prejudice prong of the *Strickland* analysis." *Id.* at 8. It stated:

We have carefully considered the testimony of Stewart and Tate which identified defendant in light of the testimony of Villanueva and Williams which defendant claims was *withheld* from the jury as the result of trial counsel's ineffectiveness. We determine that absent the alleged deficiencies the jury would have heard testimony that tended to cast doubt on the identification. However, we also determine that, although this additional testimony would have affected the weight accorded the identification testimony of Stewart and Tate, the effect of the alleged deficiencies was not so significant as to cast doubt on the outcome of the trial. Therefore, we conclude that defendant cannot establish that the outcome of the trial would have been different absent the alleged

deficiencies of trial counsel. Accordingly, defendant cannot establish that he was denied the effective assistance of counsel either at trial or on direct appeal. Therefore, the trial court did not err when it dismissed this allegation of defendant's postconviction petition.

*Id.* at 9. The Supreme Court of Illinois denied Mr. Malone's petition for leave to appeal.

In March 2003, Mr. Malone filed a second, pro se post-conviction petition. This petition was summarily dismissed by the Cook County Circuit Court. The Illinois appellate court affirmed the dismissal on December 23, 2004.

## B. District Court Proceedings

On December 10, 2004, Mr. Malone filed a pro se petition for a writ of habeas corpus in federal court. The district court denied eleven of Mr. Malone's claims, but it granted an evidentiary hearing on the issues of whether trial counsel was ineffective for failing to call Villanueva and whether appellate counsel was ineffective for failing to raise trial counsel's failure on direct appeal. *See* R.27 at 7.

The State moved for reconsideration of this ruling. It argued that the district court did not have the authority to hold an evidentiary hearing on the claim of ineffective assistance of trial counsel because Mr. Malone had failed to develop the factual basis of his claim in state court; specifically, Mr. Malone had failed to attach an affidavit from Villanueva to his state post-conviction petition. In response to the State's motion, Mr. Malone offered an affidavit from the public defender's investigator stating

that she had attempted to locate Villanueva during the state post-conviction proceedings but had been unable to find him. The district court accepted the State's argument:

> [S]ince in this case the state courts relied on petitioner's failure to supply an affidavit in dismissing his ineffective assistance of counsel claim, petitioner's explanatory affidavit here is simply too late. The court finds that petitioner failed to develop the factual basis of his claim in state court, and that this failure to develop the state court record is attributable to the petitioner's lack of diligence.
>
> Since petitioner failed to develop the state court record on this issue, Section 2254(e)(2) applies. Under that section, this Court is barred from conducting an evidentiary hearing unless the petitioner shows that his claim relies on a new rule of constitutional law or previously undiscovered facts. Petitioner has not made such a showing.

R.71 at 2-3 (citations omitted). The district court, however, granted Mr. Malone a certificate of appealability with respect to the issue of ineffective assistance of trial counsel for failing to call Villanueva as a witness. *See* R.91.[6]

---

[6] Mr. Malone seeks to expand the certificate of appealability to include whether his trial counsel was ineffective in failing to call Officer Williams for the purpose of impeaching Stewart's identification of Mr. Malone. We consider this request with the merits of Mr. Malone's claims. *See infra* at p. 37.

## II

## DISCUSSION

### A. Procedural Default[7]

---

[7] In the district court, the State argued not only that Mr. Malone was not entitled to habeas relief, but also that the district court could not hold an evidentiary hearing on Mr. Malone's claims because he had failed to develop the factual record in the state court as required by 28 U.S.C. § 2254(e)(2). Section 2254 provides:

(2) *If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim* unless the applicant shows that—

(A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2) (emphasis added).

As noted above, the district court initially ordered an evidentiary hearing on Mr. Malone's claim of ineffective assistance of counsel. The State, however, urged the district court to recon-

(continued...)

---

[7] (...continued)

sider its decision because Mr. Malone had not met the requirements of section 2254(e)(2); specifically, he had not attached an affidavit from Villanueva to his state post-conviction petition (or otherwise explained his failure to do so) as required by Illinois law. The district court agreed with the State that the explanatory affidavit from the post-conviction investigator filed in support of Mr. Malone's federal habeas claim was too late—Mr. Malone should have offered this explanation to the state court. The court then concluded that, "since in this case the state courts relied on petitioner's failure to supply an affidavit in dismissing his ineffective assistance of counsel claim, petitioner's explanatory affidavit filed here is simply too late." R.71 at 2-3. Because Mr. Malone failed to develop the state-court record, and because he did not otherwise meet the stringent requirements of section 2254(e), the district court vacated the order granting the evidentiary hearing and denied the petition on the record before it.

On appeal, the State does not urge us to affirm the district court's judgment on this basis because "the last state court to address the merits of that claim did not reject it based on petitioner's failure to append Villanueva's affidavit," and, therefore, the failure did not work a procedural default. *See* Respondent's Br. at 21 n.3. We agree. "If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available." *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991). In the present case, it was the *state trial court* that referenced the lack of affidavit from Villanueva in ruling on Mr. Malone's post-conviction petition. By contrast, the *state appellate court* did *not* hold that Mr. Malone's post-conviction petition should have been dismissed because he had failed to

(continued...)

**1.**

The State contends that Mr. Malone procedurally defaulted his claim of ineffective assistance of trial counsel because he did not raise it as an "independent claim during one complete round of state court review," Respondent's Br. at 21, namely the review of his initial state post-conviction petition. Whether a party has procedurally defaulted his claim is a question of law that we review de novo. *See Lieberman v. Thomas*, 505 F.3d 665, 670 (7th Cir. 2007).[8]

Section 2254 circumscribes a federal court's ability to grant habeas relief to prisoners in state custody. Pertinent to the present case, a federal court may not entertain a petition from a prisoner being held in state custody unless the petitioner has exhausted his available state remedies prior to seeking federal habeas relief. *See* 28

---

[7] (...continued)
secure an affidavit from Villanueva (or otherwise explain the absence of such an affidavit); rather, the appellate court reached the merits of his ineffective assistance claim. Consequently, because the state appellate court did not rely on the lack of affidavit in ruling on Mr. Malone's claims, the lack of affidavit cannot operate as a procedural bar to federal habeas review. *See Hampton v. Leibach*, 347 F.3d 219, 242 n.9 (7th Cir. 2003).

[8] Although the issue of procedural default was raised in the district court, it did not reach the issue because the court held that Mr. Malone had failed to develop the factual basis for the claims as required by 28 U.S.C. § 2254(e), and, without the benefit of additional evidence, the court could not conclude that a constitutional violation had occurred. *See supra* note 7.

U.S.C. § 2254(b).[9] "This so-called exhaustion-of-state remedies doctrine serves the interests of federal-state comity by giving states the first opportunity to address and correct alleged violations of a petitioner's federal rights." *Lieberman*, 505 F.3d at 669. "Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas corpus, *see* 28 U.S.C. § 2254(b)(1)(A), is the duty to fairly present his federal claims to the state courts." *Lewis v. Stearnes*, 390 F.3d 1019, 1025 (7th Cir. 2004) (citing *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)). Fair presentment "contemplates that

---

[9] 28 U.S.C. § 2254(b) provides:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(I) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

both the operative facts and the controlling legal prin-
ciples must be submitted to the state court." *Williams v.
Washington*, 59 F.3d 673, 677 (7th Cir. 1995). It also "re-
quires the petitioner to assert his federal claim through
one complete round of state-court review, either on
direct appeal of his conviction or in post-conviction
proceedings." *Lewis*, 390 F.3d at 1025. "A habeas petitioner
who has exhausted his state court remedies without
properly asserting his federal claim at each level of state
court review has procedurally defaulted that claim." *Id.*
at 1026.

**2.**

As noted above, the State maintains that, in his appeal
from the denial of his initial petition for state post-convic-
tion relief, Mr. Malone did not fairly present his claim of
ineffective assistance of trial counsel as an independent
claim. We believe, however, that a fair reading of the
record reveals that Mr. Malone has met this requirement.
To determine whether Mr. Malone fairly presented his
claim, we look at the arguments contained in his brief
before the Illinois appellate court. *See Dye v. Hofbauer*, 546
U.S. 1, 3-4 (2005) (looking to the claim set forth in the
appellate brief to determine if the claim had been fairly
presented); *Baldwin v. Reese*, 541 U.S. 27, 32 (2004) (identify-
ing the petition and brief as documents a court should
reference for determining whether the fair presentment
requirement has been met). Mr. Malone's statement of
points in his brief to the Illinois Appellate Court specifi-
cally mentioned his appellate counsel's ineffectiveness

for failing to raise his trial counsel's ineffectiveness, but it also specifically detailed the ways in which his trial counsel was ineffective.

> Donchii Malone was denied the effective assistance of counsel on direct appeal where appellate counsel failed to raise trial counsel's ineffectiveness; (A) in not investigating or calling Anthony Villanueva, a witness in co-defendant's case, as a witness in the defense case-in-chief to rebut the testimony of the state's star witness, Antonio Stewart; and (B) in not adducing testimony of the police officer Teddy Williams, who also testified at co-defendant's trial and who would have contradicted key witness Stewart's description of the shooter. Where the evidence was extremely close and where the state's case against the defendant hinged on the untrustworthy testimony of one witness (Stewart), trial counsel's lapses clearly affected the outcome of Malone's case before his jury.

R.19, Ex. E at I. Furthermore, in the argument section of his brief, Mr. Malone makes clear that he is seeking redress of his trial counsel's failures: "Donchii Malone respectfully requests that this Honorable Court remand this case for a hearing on his claim that his trial counsel was ineffective, notwithstanding the underlying claims could have been raised on direct appeal, because appellate counsel was ineffective in failing to raise those claims of trial counsel's ineffectiveness on direct appeal." *Id.* at 11. The introduction to the argument section concludes accordingly: "For the reasons advanced below, Mr. Malone respectfully requests that this Honorable

Court find ineffective assistance of both trial and appellate counsel and reverse his case for a new trial, or in the alternative, to remand the cause for an evidentiary hearing." *Id.* at 13. Mr. Malone then spends the next five pages of his brief detailing the factual bases of his claim of ineffective assistance of trial counsel under the heading: "Trial Counsel's Failure in Not Investigating or Calling Anthony Villanueva, a Witness Who Would have Severely Undermined the State's Single Identification Occurrence Witness Was Manifest Incompetence, Not Sound Trial Strategy. Appellate Counsel's Failure in Not Raising This Meritorious Issue Denied Donchii Malone the Effective Assistance of Counsel on Appeal." *Id.* Specifically, Mr. Malone explained that his trial counsel knew, prior to the time of trial, that Villanueva was an eyewitness and also that trial counsel had witnessed Villanueva's testimony on behalf of Taylor. Mr. Malone then argued that it was "inexplicable that counsel for Mr. Malone did nothing to present Villanueva's crucial testimony to the Malone jury." *Id.* at 15. Mr. Malone also stated that, in the absence of his counsel's substandard performance, "there [wa]s a reasonable probability that the outcome of the proceeding would [have] be[en] different." *Id.* at 17 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). In short, Mr. Malone set forth not only the factual basis for his claim, but also the operative legal standard for evaluating the facts presented.

The State argues that, despite setting forth the factual basis and legal principles relevant to his claim, Mr. Malone nevertheless procedurally defaulted his claim of ineffective assistance of trial counsel because it was imbedded

in his claim of ineffective assistance of appellate counsel. The State maintains that our decision in *Lewis v. Stearnes*, 390 F.3d 1019 (7th Cir. 2004), precludes our consideration of trial counsel's ineffectiveness unless Mr. Malone clearly identified the ineffectiveness of trial counsel as an independent ground for relief.

We do not believe that *Lewis* precludes federal review under the circumstances presented here. In *Lewis*, the federal habeas petitioner sought relief based on, inter alia, a tainted identification procedure and a violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). We held, however, that the claims had been procedurally defaulted because they had not been presented as independent claims for relief, but only as examples of counsel's failures. We explained:

> Lewis procedurally defaulted Claims 1 (tainted identi-fications) and 3 (*Batson* violation). He did not pursue either of these claims, as such, on direct appeal or in the post-conviction proceeding. It is true that during the post-conviction proceeding, Lewis cited his trial and/or appellate counsel's failure to pursue these claims in support of his claims of attorney ineffective-ness. However, an assertion that one's counsel was ineffective for failing to pursue particular constitu-tional issues is a claim separate and independent of those issues. A meritorious claim of attorney ineffec-tiveness might amount to cause for the failure to present an issue to a state court, but the fact that the ineffectiveness claim was raised at some point in state court does not mean that the state court was given the opportunity to address the underlying issue that the attorney in question neglected to raise. . . .

*Id.* at 1026. Here, however, it is clear that Mr. Malone raises ineffective assistance of appellate counsel as a means for the court to reach the ineffective assistance of trial counsel, i.e., as the cause for failing to raise the ineffective assistance of trial counsel claim. This intent is evident from the opening sentences of the argument section of his brief; he states:

> Donchii Malone respectfully requests that this Honorable Court remand this cause for a hearing on his claim that his trial counsel was ineffective, notwithstanding that the underlying claims could have been raised on direct appeal, because appellate counsel was ineffective in failing to raise those claims of trial counsel's ineffectiveness on direct appeal.

> Generally, the issue of whether a criminal defendant was denied the effective assistance of trial counsel is waived if not raised on direct appeal. That rule is relaxed, however, where fundamental fairness requires, such as where the waiver stems from the incompetency of appellate counsel. . . .

R.19, Ex. E at 11-12. Mr. Malone makes clear that he is asking the court to redress the failure of his trial counsel, an issue the court can reach if it determines that his appellate counsel also was ineffective. His presentation, therefore, does not suffer from the infirmities that we identified in the petitioner's submissions in *Lewis*.

In sum, Mr. Malone fully set out the factual and legal bases for his claim of ineffective assistance of trial counsel. Through his first petition for state post-conviction relief

and the appeal therefrom, Mr. Malone alerted the state courts to the nature of his claim and provided the state courts with the opportunity to address the underlying issue. Consequently, he fairly presented his federal claim to the state courts.

**3.**

Even if we were to conclude that Mr. Malone had not fairly presented his claim of ineffective assistance of trial counsel to the state appellate court, we nevertheless would not be precluded from reviewing Mr. Malone's claim here.

Exhaustion, with its corollary requirement of fair presentment, "serves the interests of federal-state comity by giving states the first opportunity to address and correct alleged violations of a petitioner's federal rights." *Lieberman*, 505 F.3d at 669. In determining whether the fair presentment requirement has been met, "we assess whether the petitioner alerted the state court to the federal nature of his claim in a manner sufficient to allow that court to address the issue on a federal basis." *Id.* at 670. When there is a question as to whether a state has been sufficiently "alerted," we evaluate the petitioner's submissions to the state courts to determine if a petitioner "has offered the operative facts and controlling legal principles of his claim to the state courts." *Id.* (citations omitted). However, when it is clear from the state court's decision that it not only recognizes the petitioner's federal claim, but also resolves the claim on the merits,

engaging in our typical assessment is unnecessary. Regardless whether the petitioner has satisfied *our* constructs for fair presentment, if the state resolves a claim on the merits, the petitioner's presentation must have been sufficient to alert the state court to the nature of the claim.

Such is the case here. The state appellate court recognized that Mr. Malone was asserting a claim of ineffective assistance of trial counsel: "Defendant first contends that he was denied the effective assistance of counsel at trial because this attorney failed to investigate the potential testimony of, or call, Villanueva or Williams as witnesses." R.19, Ex. H at 6. It also recognized that Mr. Malone was asserting his appellate counsel's ineffectiveness as a means to reach the errors of trial counsel. *See id.* at 6-7 ("Because [Villanueva's and Williams'] testimony was part of the record on appeal, defendant could have raised this issue on direct appeal. Generally, [a] defendant's failure to raise this issue on direct appeal would result in waiver. However, the waiver rule is relaxed when a defendant alleges that the failure to raise an issue on appeal constituted the ineffective assistance of counsel." (internal citations omitted)). After reviewing the standard for evaluating both ineffective assistance of trial and appellate counsel, *see id.* at 7 (citing *Strickland*, 466 U.S. at 687, 694), the appellate court turned to the facts of the ineffective assistance of trial counsel claim. The court then stated:

> We have carefully considered the testimony of Stewart and Tate which identified defendant in light of the testimony of Villanueva and Williams which

defendant claims was *withheld* from the jury as the result of trial counsel's ineffectiveness. We determine that absent the alleged deficiencies the jury would have heard testimony that tended to cast doubt on the identification. However, we also determine that, although this additional testimony would have affected the weight accorded the identification testimony of Stewart and Tate, the effect of the alleged deficiencies was not so significant as to cast doubt on the outcome of the trial. Therefore, we conclude that defendant cannot establish that the outcome of the trial would have been different absent the alleged deficiencies of trial counsel. Accordingly, defendant cannot establish that he was denied the effective assistance of counsel either at trial or on direct appeal. Therefore, the trial court did not err when it dismissed this allegation of defendant's postconviction petition.

*Id.* at 9. The opinion of the appellate court makes clear that it understood that Mr. Malone was asserting ineffective assistance of trial counsel as a ground for relief, that it recognized the claim as one grounded in federal constitutional law (and cited appropriate standards) and that it resolved Mr. Malone's claims on the merits. Because the state appellate court took the opportunity to resolve Mr. Malone's federal claims on the merits, the interest behind the exhaustion and fair presentment requirements—to provide the state with the first opportunity to correct constitutional errors—has been served. Consequently, we may proceed to consider Mr. Malone's

claim of ineffective assistance of trial counsel on the merits.[10]

## B. Ineffectiveness of Trial Counsel

Mr. Malone argues that the state appellate court erred in determining that his trial counsel was not constitutionally ineffective. Section 2254 of Title 28 sets forth the standards according to which we must evaluate Mr. Malone's claim. Specifically, we cannot grant the writ to a petitioner in State custody

---

[10] Before proceeding to the merits, we address one last issue raised by the State in its brief. The State maintains that the "Petitioner does not argue in his opening brief that his procedural default can be excused—notwithstanding respondent's assertion of procedural default in the district court—and he has thus forfeited the point." Respondent's Br. at 27. In support of this argument, the State cites *Aliwoli v. Gilmore*, 127 F.3d 632 (7th Cir. 1997). In *Aliwoli*, the district court had determined that the petitioner had procedurally defaulted a claim; in his opening brief on appeal, however, the petitioner did not argue that his default should be excused. We, therefore, held: "As in the district court, *Aliwoli* does not present any arguments in his appellate brief relating to cause for his default in state court or any prejudice resulting therefrom, and he has failed to establish the necessary prerequisite to our reviewing the merits of his claim." *Id.* at 634-35. *Aliwoli* has no application to the case before us. As noted above, the district court did not reach the State's exhaustion argument. Because the district court did not reach the question of exhaustion, there was no reason for Mr. Malone to argue in his brief on appeal that his alleged failure to exhaust state remedies should be excused.

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . .

28 U.S.C. § 2254(d). Mr. Malone maintains that, in evaluating his ineffective assistance claim, the state appellate court's decision was contrary to clearly established federal law and also constituted an unreasonable application of clearly established federal law.

### 1.

Mr. Malone first argues that the Illinois appellate court's adjudication of his ineffective assistance of trial counsel claim was contrary to clearly established federal law because the court applied a prejudice standard at odds with the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). According to Mr. Malone, the Illinois appellate court required him to prove that the outcome of his trial would have been different if Villanueva had testified, *see* R.19, Ex. H at 9; however, *Strickland* only requires that the petitioner establish a *reasonable probability* that the outcome would have been different, *see Strickland*, 466 U.S. at 694.

We believe that Mr. Malone's argument rests on a cramped reading of the Illinois appellate court's decision. The appellate court correctly recited *Strickland* as the

standard to be applied and also stated that "[t]o demon-strate prejudice a defendant must establish that there is a reasonable probability, that, but for the alleged errors, the outcome of the proceeding would have been different. A reasonable probability is a probability sufficient to under-mine confidence in the outcome of the proceedings." R.19, Ex. H at 7 (citations omitted). Because the defendant had to establish both deficient performance and prejudice, the appellate court proceeded directly to the prejudice prong of the *Strickland* standard—an approach that we often have followed in our own application of *Strickland*. *See, e.g., Matheney v. Anderson*, 253 F.3d 1025, 1042 (7th Cir. 2001) ("We need not determine the first, or 'performance,' prong of the *Strickland* test, if we find that counsel's alleged deficiency did not prejudice the defendant." (citing *Strickland*, 466 U.S. at 697)). After evaluating the evidence, the court determined that,

> although this additional testimony would have af-fected the weight accorded the identification testimony of Stewart and Tate, the effect of the alleged deficien-cies was not so significant as to cast doubt on the outcome of the trial. Therefore, we conclude that the defendant cannot establish that the outcome of the trial would have been different absent the alleged deficiencies of trial counsel. . . .

R.19, Ex. H at 9.

The language of the state appellate court here mirrors that employed by the state court in *Stanley v. Bartley*, 465 F.3d 810 (7th Cir. 2006). In that case, the state appellate court had quoted correctly the standard from *Strickland*,

but in its conclusion had stated that "Stanley was not so prejudiced by any of the alleged mistakes that the outcome of the trial would have been any different." *Id.* at 813. We noted that this statement was an incorrect recitation of the standard. We held, however, that "[h]aving expounded the well-known standard correctly on the previous page of its opinion, it is more likely that the court stated its conclusion imprecisely than that it applied a different standard," and the state court was "entitled to the benefit of the doubt." *Id.*

Here, given that the state appellate court correctly referenced *Strickland*, recited the *Strickland* standard correctly, and employed the methodology outlined in *Strickland*, we believe, as we did in *Stanley*, that "it is more likely that the court stated its conclusion imprecisely than that it applied a different standard." *Id.* at 813; *cf. Uttecht v. Brown*, 127 S. Ct. 2218, 2228 (2007) (noting that a state court does not have to recite repeatedly a standard in order to establish that it applied the correct standard to each alleged constitutional violation). We therefore reject Mr. Malone's argument that the state appellate court's decision was "contrary to" the ineffective assistance standard articulated in *Strickland*.

**2.**

If the state court has identified correctly the governing law, the habeas petitioner must show that the state court applied the governing law—in this case *Strickland*—in an unreasonable manner. *See Hough v. Anderson*, 272 F.3d

878, 889-90 (7th Cir. 2001). To satisfy this statutory re-
quirement, the petitioner must establish that "[t]he state
court's application of *Strickland* [was] objectively unreason-
able and not merely erroneous." *Julian v. Bartley*, 495
F.3d 487, 494 (7th Cir. 2007) (citing *Yarborough v. Gentry*,
540 U.S. 1, 5 (2003)). Mr. Malone maintains that the
Illinois appellate court's application of the *Strickland* test
to the facts of his case was, in fact, objectively unreason-
able.

### a.

We evaluate, therefore, whether the Illinois appellate
court's conclusion that Mr. Malone was not prejudiced by
his counsel's failure to call Villanueva is a reasonable
one. "In assessing whether [Mr. Malone] has demonstrated
prejudice, this court must consider the evidence in its
totality." *Wright v. Gramley*, 125 F.3d 1038, 1042 (7th Cir.
1997). A verdict supported by weak evidence "is more
likely to have been affected by errors than one with
overwhelming record support." *Williams v. Washington*, 59
F.3d 673, 684 (7th Cir. 1995) (internal quotation marks
and citations omitted).

Given the nature of the evidence against Mr. Malone, as
well as his counsel's failures, we are persuaded not only
that there is a reasonable probability that the outcome
of the trial would have been different had Mr. Malone's
counsel called Villanueva, but also that the state appellate
court's decision to the contrary was an unreasonable one.
The state's case against Mr. Malone was far from iron-clad.
His conviction was not supported by any physical evi-

dence; it rested wholly on the testimony of two eyewitnesses: Stewart and Tate. Of the two eyewitnesses, Stewart, a member of a rival gang whose weaknesses as a witness were noted by the trial court, was the only witness to identify Mr. Malone as the shooter. Although he knew Mr. Malone at the time that the crime occurred, he did not immediately identify Mr. Malone as the perpetrator, or even as being present at the scene; he first identified Mr. Malone in a photo array later that afternoon. Tate, on the other hand, only placed Mr. Malone at the scene; she did not witness the shooting, and, therefore, she could not identify the shooter. Tate testified that, after the shooting occurred, she heard Stewart shout "the bitch popped 'em," she saw Davis running down the street with a gun, and she saw two other men (one of whom she later identified as Mr. Malone), running in the opposite direction. Tate picked Mr. Malone out of a lineup at approximately 10:15 on the evening of the shooting. Although Tate recognized Mr. Malone as being from the neighborhood, she did not know him personally.

Under circumstances similar to the present case, we have held that a defendant was prejudiced by his attorney's failure to investigate and call potentially exculpatory witnesses. In *Hampton v. Leibach*, 347 F.3d 219 (7th Cir. 2003), the defendant was convicted in state court of sexual assault, attempted rape, robbery and aggravated battery based on the eyewitness testimony of the victims and of a security guard. The assault had occurred in a dark, crowded theater during a general melee. Furthermore, none of the witnesses knew Hampton, had seen him prior to the incident or had seen him for more than a

few minutes in the confused atmosphere of the theater. Nevertheless, the state appellate court determined that the defendant was not prejudiced by his counsel's failure to investigate and call other witnesses who would have testified that Hampton was sitting with them during the time of the events in question. In considering this determination upon habeas review, we stated:

> Given the central role that eyewitness testimony played in this case, the vulnerabilities in the testimony of the State's eyewitnesses, and the shortcomings in human perception that so frequently render eyewitness testimony less reliable than other types of evidence, we are more than satisfied that the failure to investigate exculpatory eyewitnesses likely affected the outcome of Hampton's trial. The eyewitnesses that Hampton has identified, and whose testimony the district court found credible, would have given the jury a powerful reason to doubt Hampton's culpability.

*Id.* at 253 (internal quotation marks omitted). We noted additionally that "[t]wo separate acquittals len[t] support to this notion." *Id.* First, the jury had acquitted Hampton of the attempted rape of another woman who, "according to a written report of a line-up[,] . . . had picked Ezra Garner rather than Hampton as her assailant." *Id.* We noted that "[t]he jury's decision to acquit Hampton on that charge, but not others, suggests that the report gave it reason to doubt the reliability of Martha N.'s identification in a way that it did not doubt the other witnesses against Hampton." *Id.* Second, Ronald Mallory, who had been identified by one of the victims as an assailant,

"ultimately was acquitted of all charges. . . . In his defense, Mallory had testified that he did not participate in the attack, and he called three additional witnesses who said the same thing (a fourth witness confirmed that he was not a gang member)." *Id.* We concluded that "Mallory's acquittal demonstrate[d] the importance of exculpatory eyewitness testimony and suggests that Hampton's jury might have been swayed by such testimony." *Id.*

The present case bears important similarities to *Hampton*. First, eyewitness testimony was the crux of the prosecution's case. Additionally, there were "vulnerabilities in the testimony of the State's eyewitnesses," *id.* at 253—at least with respect to identifying Mr. Malone's role in the events surrounding the shooting. Finally, as in *Hampton*, the record strongly suggests that counsel's failure to call Villanueva influenced the jury's verdict: Villanueva testified on behalf of Taylor; Taylor was acquitted. Although Villanueva's testimony concerning Mr. Malone was not as compelling as his testimony concerning Taylor,[11] we believe that there is a reasonable probability that the missing testimony made a difference.

However, it is not sufficient that the Illinois appellate court erred; in order to be entitled to habeas relief, the

---

[11] Villanueva affirmatively testified that Taylor, a person whom he knew, was not present at the scene. Villanueva, however, did not know Mr. Malone and did not state affirmatively that Mr. Malone had not been present at the scene. Instead, when asked if any of the individuals present at the shooting were in the courtroom, Villanueva did not identify Mr. Malone. *See supra* at 5-6.

Illinois appellate court's determination also must be unreasonable. As in *Hampton*, we believe that the appellate court here "turned a blind eye" both to the nature of the State's case and to the importance of Villanueva's testimony. 347 F.3d at 256. As noted above, the key witness for the State was Stewart. However, the state appellate court either failed to mention or glossed over Stewart's principal weaknesses as a witness, namely that he knew Mr. Malone but failed to identify him at the scene, and that his contemporaneous utterances ("the bitch popped 'em") suggest that someone other than Mr. Malone was the perpetrator. As well, although Villanueva's testimony in support of Mr. Malone was not as strong as that for Taylor, Villanueva's testimony still would have provided the jury with further doubt as to Mr. Malone's involvement and may have provided "the jury a reason to acquit." *Id.* Consequently, we must conclude that the state appellate court's determination that Mr. Malone was not prejudiced by his counsel's failure to call Villanueva was not a reasonable one.

### b.

Because we conclude that Mr. Malone was prejudiced by his counsel's failure to call Villanueva, we also must address whether the performance prong of the *Strickland* standard has been met, that is, whether counsel's performance "fell below an objective standard of reasonableness." 466 U.S. at 688. Because the Illinois appellate court did not reach the question of counsel's performance, "our review is not circumscribed by a state court conclusion"

with respect to this issue, *Wiggins v. Smith*, 539 U.S. 510, 534 (2003), and we may consider the matter de novo.

We have discussed at length the importance of presenting eyewitness and alibi testimony to counter similar evidence offered by the prosecution. *See Hampton*, 347 F.3d at 250 (collecting cases). Especially when there are vulnerabilities in the prosecution's identification testimony, "[o]pposing testimony from other eyewitnesses . . . give[s] the jury a qualitatively different and more powerful reason to believe that the State's witnesses [a]re mistaken in their identifications." *Id.* Despite the importance of the evidence, however, the record does not suggest a concrete reason why Mr. Malone's counsel chose not to call Villanueva. Indeed, when the trial court questioned Mr. Malone's counsel during sentencing concerning his failure to call Villanueva, Mr. Malone's counsel merely stated, without elaboration, that the decision was a matter of trial strategy.

Villanueva did not appear to have any potential bias or serious credibility issues that should have given counsel pause. Additionally, Villanueva's testimony would not have opened the door to other potential lines of questioning that may have been damaging to Mr. Malone. *Cf. Burger v. Kemp*, 483 U.S. 776, 791-92 (1987) (noting that "an experienced trial lawyer could properly have decided not to put either petitioner or the psychologist" on the stand when cross-examination would have exposed damaging evidence concerning the petitioner).

The State maintains that there are several reasons why trial counsel, as a matter of sound strategy, could have

decided not to call Villanueva. The State argues that, if counsel had called Villanueva, "counsel risked having Villanueva testify in front of the jury that he was merely unable to say whether petitioner was present," and it was legitimate for counsel not to "reopen the proofs" to "introduce potentially unhelpful evidence." Respondent's Br. at 33. We believe that the State significantly underestimates the "helpfulness" of Villanueva's testimony. Villanueva was a *disinterested* witness who observed the events of the morning of July 22 at close distance. Even if his testimony concerning Mr. Malone were somewhat equivocal, it still would have been relevant and probative evidence that tended to cast doubt on Mr. Malone's participation in the shooting. *See* Fed. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

The only other reason, suggested by the State, as to why counsel may have decided not to call Villanueva is that "the prosecution could have impeached Villanueva's account of the shooting with his prior statement, given to the police shortly after the shooting, in which Villanueva claimed to have been sleeping at the time of the shooting." Respondent's Br. at 33. However, whether Villanueva arrived at his window immediately before or immediately after shots were fired does not affect his testimony concerning Mr. Malone—that he did not recognize Mr. Malone as one of the individuals present at the scene.

As set forth above, in situations where the State's case rests on eyewitness testimony, eyewitness testimony on

behalf of the defendant effectively diffuses the State's case and provides the trier of fact with a reason to acquit. Neither Mr. Malone's counsel nor the State has offered a compelling reason why such testimony was not offered in the present case. However, it does not appear that, at this point in the litigation, there has been an opportunity for the parties to explore fully whether the first prong of the *Strickland* analysis has been met. There is some evidence of trial counsel's ineffectiveness; Villanueva testified that he could identify only one person in the courtroom as a perpetrator, Michelle Davis, even though Mr. Malone was sitting there. Faced with this record and the reality that even wavering testimony by Villanueva would be helpful to Mr. Malone, the State is left with conjectural possibilities as to the reasons for counsel's failure to call Villanueva. The petitioner, Mr. Malone, has the ultimate burden of establishing trial counsel's ineffectiveness, and the record already contains some evidence of that ineffectiveness. Whether Mr. Malone ultimately can meet his burden is an issue that should be addressed in the first instance by the district court after it has ensured that both sides have had a full and fair opportunity to develop the record.

Mr. Malone also faults his counsel for failing to use Officer Williams' report to impeach Stewart and for failing to call Officer Williams to point out the inconsistencies in Stewart's statements. The key discrepancy that Mr. Malone seeks to expose is that Stewart described the shooter as having a light complexion; however, Stewart later identified Mr. Malone as the shooter, and Mr. Malone has a dark complexion. The remaining description given

by Stewart to Officer Williams—that the shooter wore a Cubs hat, a t-shirt and jeans—is consistent with that given by Tate.

Counsel's failure to impeach Stewart on this one variation, *standing alone*, does not rise to the level of ineffective assistance, nor is there a reasonable probability that it affected the outcome of the trial. However, "[w]e previously have pointed out that prejudice may be based on the cumulative effect of multiple errors. Although a specific error, standing alone, may be insufficient to undermine the court's confidence in the outcome, multiple errors together may be sufficient." *Hough*, 272 F.3d at 891 n.3 (internal citations omitted). On remand, the district court certainly should consider whether counsel's cumulative errors rise to the level of ineffective assistance of counsel and whether, as a result of those errors, there is a reasonable probability that the outcome of the trial would have been different.

### Conclusion

For the reasons set forth above, the judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.

REVERSED and REMANDED